Nicholson, C. J.,
delivered the opinion of the Court.
Complainants’ are the widow and children of 'Win. Jennings, deceased; and the principal defendant, J. D. *284 Jennings, is the father of Wm. Jennings. The controversy involves the title to a tract of land of 206 acres, conveyed by J. D. Jennings to his son, Wm. Jennings, in 1861. The conveyance purported to be for the consideration of $1,100, in hand paid. It was executed and delivered, but was afterwards lost, and has never been registered.
Complainants claim that the land was paid for with the separate money of Julia Jennings, then wife of Wm. Jennings, and that she is the equitable owner, or, at least, that she has a right to pursue her money, which was used in paying for the land, and that her lien is prior to all other claims. Defendant, J. D. Jennings, insists that he holds Wm. Jennings’ note for $900, and a claim of about $300, paid for him as accommodation indorser on a note for that amount; and that both of the notes were given for the land. He claims to have the vendor’s lien, and that this is superior to any claim of complainants.
It appears from the proof, that Julia Jennings, now Julia Templeton, was married to Wm. Jennings in 1857. At the time of her marriage, she was about eighteen years of age, and was entitled to a distributive share in the estate of Audley Harrison, amounting to nearly $1,-100. This fund was in the hands of the Clerk and Master of the Chancery Court at McMinnville. Soon after the marriage, Wm. Jennings received from the Clerk a portion of this fund, and executed his receipt for it. Not long afterwards, in 1857, he borrowed a still larger portion from the Clerk, and executed his notes therefor, with his father, J. D. Jennings, as his surety. These notes *285 arc still in the hands of the Clerk and Master. In 1858, Wm. Jennings applied to the Court for an order to be made on the Clerk, directing him to pay the fund to him. The Court made the order., after privily examining the wife of Wm. Jennings, and learning from her that she wanted the money paid over to her husband. The residue in the Clerk’s hands was then paid to the husband, and his receipt in full taken.
Nothing appears, in the order or in the proof, indicating that it was made known to the Court that the wife was a minor when she was examined, or when the order was made. She does not allege that any misrepresentation was made by her husband, upon the subject of her age; nor is there any proof going to show that he made any such misrepresentation, or that he exercised any undue influence in procuring her assent to the order. The proof makes it reasonably certain, that he used the money for several jmars in trade, and that the deed for the land was not taken until about three or four years after the money was received from the Clerk. During this period, there is no evidence of any dissatisfaction or complaint, on her part, as to the use he was making of the money; nor is there any evidence, satisfying us that there was any agreement or undertaking, on his part, to invest the money in any special manner.
Under this state of facts, we hold that the husband took the money as his own, by virtue of his- marital right, which attached to it on his marriage, and which right became absolute, so soon as it was received under 'the order of the Court. It is true, that the wife had a right to have a reasonable portion of the fund settled on her, if *286 she had elected so to do. It is also true, that if the Court had been informed that the wife was a minor, it would have been contrary to the practice in such cases, to receive the assent of the wife as sufficient ground for ordering the money to be paid over. But as there is no allegation or proof of any fraud, or undue influence, in procuring the order, and as the wife seems to have acquiesced in the receipt and appropriation of the money, after she became of full age, and, as far as we can see, down to the filing of the bill, in 1865, we feel fully authorized to hold that the husband received the money divested of any trust. Wilkes v. Fitzpatrick, 1 Hum., 54; 1 Lead. Cas. Eq., 382.
The next question presented, is, whether the defendant, J. D. Jennings, is entitled to have the land subjected to sale, to satisfy his alleged vendor’s lien? We should be embarrassed in reconciling the apparently conflicting testimony on this question, but for the evidence of the draftsman of the deed, and of the $900 note. This witness does not recollect the consideration expressed in the deed; but other witnesses, who saw and read it, make it certain that the consideration expressed was $1,100, in hand paid. The draftsman says that he not only drew the deed, but, at the same time, a note. He does not remember the amount -of the note, but he recognizes the $900 note as in his handwriting. He says, that, when J. D. Jennings executed the deed and note, he remarked that he made a warrantee deed to his son, and that he took his note, but that was only a sham; that he intended the land for his son, and that he took his note, and he wanted nothing more. There is proof, by other witnesses, *287 that the father and son both spoke of the price of the land as being $2,000; and there are still other witnesses, who prove that J. I). Jennings gave $800 or $900 for the land, and that he was to let his son have it at what it cost him, probably requiring interest to be added. The preponderance of the proof is, that the land was worth about $2,000. We think the evidence of the draftsman of the deed and note reconciles this apparently conflicting testimony. The nominal price -of the land was §2,000; the son had paid $1,100; the land was intended for the son; his note for $900 was taken as a sham— that is, as we interpret the transaction, he wanted the note of his son for §900, as evidence of the amount of advancement in the land that he intended for him; he wanted nothing more than his note. It is clear, that the proof of the draftsman of the papers is wholly irreconcilable with any claim retained for his vendor’s lien, either for the $900 or the §300 note. The retention of any such lien is clearly repelled by the evidence of this witness.
Our conclusion is, that the $1,100, expressed in the deed, was the real amount which the father intended to charge the son for the land, and that the residue was intended as an advancement. As the proof is satisfactory that the $1,100 was paid, we hold that Wm. Jennings died the absolute owner of the land, free from any in-cumbrance for unpaid purchase money; and that, upon his death, it descended to his children, subject to the dower of his widow.
The decree of the Chancellor is- reversed; the lost deed *288 for the land set up; the title divested out of J. D. Jennings, and vested in the heirs of Wm. Jennings, subject to the widow’s dower; the note in the hands of the Clerk and Master, for the money borrowed by Wm. Jennings, with J. D. Jennings, as surety, will be cancelled; and the cause remanded for the assignment of dower, and such other proceedings as may be necessary.
The costs of the Court below already accrued, and the costs of this Court, will be paid by J. D. Jennings; the costs that may hereafter accrue in the Court below, will be disposed of by the Chancellor.