Nelson, J.,
delivered the opinion of the Court.
Hobert Lacefield departed this life intestate in Hardin county in the month of June, 1868, leaving a widow, Jane, and four children, who are his *211 heirs at law. Administration. on his estate was granted to the complainant, who, together with two of the heirs, filed this bill on -the 21st December, 1868, against the widow and John II., and'Thomas Lacefield, the latter a minor. It appears that the said Robert Lacefield, previous to his death, executed to his said son, John II., five deeds of conveyance, as follows, viz.: one for two tracts of one hundred and seventy-one acres, and one hundred and ninety-three acres, more or less, dated and registered 22d January, 1859, and purporting to be for the consideration of one hundred dollars; one for three acres, more or less, dated and registered 14th October, 1867, purporting to be for the consideration of ten dollars;. one for thirty acres, more or less, bearing date 4th December, 1866, and registered 16th October, 1867, purporting to be for the consideration of four hundred and fifty dollars; one for five tracts, containing in all one hundred and eighty and three-quarter acres, bearing date 24th December, 1867, and registered 27th December, 1867, purporting to be in consideration of five hundred dollars; and one for two hundred acres, dated and registered at said last mentioned date, and purporting to have been executed for the consideration of one hundred dollars, all of the lands being situate in Hardin county. The bill charges that the personal assets were amply sufficient to pay the debts; that the said several tracts of land were in fact conveyed as advancements to John II. Lacefield; that the two tracts conveyed in the first deed were *212 worth six hundred dollars, and that the consideration of one hundred dollars was merely nominal; that the other tracts were also conveyed at nominal prices; and, especially, that the said John H. had paid but a small part of the said consideration of five hundred dollars named in one of said deeds; but the deed is erroneously described in the bill as being only for fifty acres. It is further charged that no notes or evidences of debt against the said John II. were found among the papers of the intestate; that the said John II. had free access to them, and in some way received back the notes; that only about seventeen dollars of current money was found on hand at the intestate’s death; and that he had paid out little, or no money before his death. • The bill also charges that the testator died seized and possessed of a tract containing about one hundred and sixty acres of land, out of which dower had been assigned by the County Court to the widow, and that the said tract is so situated that partition thereof cannot be made. The defendants were required in the bill to answer a number of special interrogatories, and the prayer of the bill is, that upon final hearing a decree shall be pronounced directing a sale of the tracts of land, subject to the widow’s dower; that an account be taken of all the advancements; that a full and fair settlement of the estate may be had; and that all such other and further relief be granted as may seem just.
John II. Lacefield, in his answer, insists that he *213 paid two hundred dollars for the land conveyed in the first named deed, and that the consideration of one hundred dollars was inserted therein by mistake; that he paid every dollar of the consideration stated in said deed, with the exception of three hundred dollars, the balance due for the lands conveyed in the two last named deeds; and that for this amount he executed three notes, each for one hundred dollars, and severally falling due on the 25th December in the years 1870, 1871 and 1872. He admits that he was indebted to his father in other small amounts, which he specifies, and that certain advancements of no great value were made to him in personal property, which are also described. He states that his aggregate indebtedness to his father was four hundred and twenty-six dollars; that he had remained with bis father for more than ten years after he became of age, giving all necessary attention to his person and business; that his father had frequently promised to pay him for what he had done, and in 1868 surrendered the notes to him in consideration of his services, and on the 2d June, 1868, executed a receipt in full, which was written and witnessed by complainant, Merriman. He denies that the lands were given, or advanced to him, and states that he and his father were both solvent, and that all the transactions between them were conducted fairly, and in good faith. In other particulars he also responds fully to the charges in the bill.
Mrs. Lacefield also answered the bill, and as a *214 cross-bill, charged in her answer that the administrator had sold certain property “ exempt from execution,” to which she was entitled, and that under ■the Act of 12th March, 1868, she was ’ entitled to two hundred and fifty dollars’ worth of personal property, and a homestead, not exceeding in value one thousand dollars, which were not allowed her, and that part of the allowance for her year’s support was withheld by the administrator. She prays that he may be held to account, etc., and for general relief.
The administrator filed an answer to the cross-bill, in which he denies, at length, and in detail, its principal allegations.
An answer was also filed by the guardian ad litem of Thomas Lacefield.
Much evidence was taken in the cause, and the Chancellor pronounced a decree upon the hearing of the bill and cross-bill, in which he declared that the said John H. had paid two hundred dollars for the two first mentioned tracts of land, but that the price was inadequate, and he should account for the real value, to be ascertained by the Master; that the other lands were fully paid for, with the exception of the amounts of said three notes, which were delivered up, upon sufficient consideration, and that said receipt is evidence of a full and final settlement of all claims and dealings between the parties up to the period of its date. An account was also ordered as • to the advancements to the other heirs, and as to so much of the personal *215 property exempt from execution, as was converted by tbe administrator; and it was declared that tlie widow is entitled to the said sum of two hundred and fifty dollars. The complainants in the original bill, and John H. Lacefield excepted to this decree, and both parties prayed appeals to this Court, which were duly granted. TJpon the various propositions submitted in behalf of complainants, we adjudge and declare as follows:
1. That the answers of John IT. Lacefield as to the consideration upon which the first deed was executed is directly responsive to the interrogatory propounded in the bill, and that he paid two hundred, instead of one hundred dollars for said two tracts of land. The statement is not disproved by the contradictory declarations of Eobert Lacefield, made after the execution of the deed, even if such declarations could be regarded as admissible testimony. But it has been frequently held that such subsequent declarations are inadmissible: 2 Lead. Cases in Eq., 3d Am. Ed., 182, 183, m. To some three of the witnesses he stated that John had not paid for the land, and to some three or four others he stated in substance, that John had paid for it, or that his other children might pay, as John had done; and his declarations, if admissible, are, to say the least, well balanced. Although the proof shows that land was worth considerably more than the amount John paid for it, yet the deed states no other than a pecuniary consideration, and the evidence is not sufficient to establish that the dif *216 ference in value was intended as an advancement. The answer treats it as a pure business transaction, and is not disproved. In the absence of the proof of fraud,, on the part of the bargainee, “ a court of equity will not weigh in golden scales ” the dealings between parent and child, or declare what both parties intended as a sale, an advancement upon proof merely of inadequacy of consideration. In construing the English statute of distribution, which may be regarded as the basis of our own statutes, it was long since declared that “if the child had been a purchaser or creditor of the father, it could not be intended that what ivas the child’s purchase or debt should be brought into ‘ hotch-pot’ Edwards v. Freeman, 2 Peere Williams, 1 Am. ed., 448.
2. As to the remaining deeds, all of which were executed within two years, and the two last within six months, before the intestate’s death, it is now insisted that Robert Lacefield, at the time of their execution, was between seventy and eighty years of age; that his mind was greatly impaired by age, intemperance and disease; that the deeds were executed upon a grossly inadequate consideration, and that their execution was brought about by the fraudulent procurement and undue influence of John II. Lacefield. If the facts were as thus assumed, no relief could be granted in this case, because the object of the bill is not to set aside the conveyances for fraud, but to obtain an account of advancements, a settlement of the estate, and a sale *217 of land in lieu of partition. Although tbe rules of pleading are not so stringent in courts of equity, as in courts of law, yet pleading in equity is just as much a science as it formerly was at law, and there are well-known forms and modes of proceeding which cannot with propriety be disregarded. “An original bill praying the decree of the court touching rights claimed by the person exhibiting the bill in opposition to rights claimed by the person against whom the bill is exhibited, must show the rights of the plaintiff or person exhibiting the bill, by whom and in what manner he is injured, and in what he wants the assistance of the court:” Mitf. Pl., 6th Am. ed., 38. “In setting forth such right and title, the governing principle is, that so much certainty must pervade the statement as to preyent the defendant from being taken' by surprise. He must be permitted to know explicitly what the complaint against him is. There must be such a specification as will enable him to meet the alleged facts by direct issue, and thereby countervail the general charge, whether it be of fraud, mistake, accident, or trust. But after alleging such specific act or fact, the plaintiff need not set forth minor circumstances merely going to make out, or corroborate such specification:" Ibid., 47, in note. “ These material averments should be contained in the stating part of the bill: Ibid., 50, note. In Sto. Eq. P., § 314, it is said that “what constitutes, in the sense of the rule, a prayer for relief, is a matter of some nicety;” and although, *218 under tbe prayer of general relief tbe particular relief wbicli tbe case requires may be granted without a special prayer of tbe particular relief, yet the relief granted must essentially depend upon tbe case made by the bill, and its proper frame and structure; and a bill framed for one purpose will not be permitted to answer another, especially if tbe defendant may be surprised or prejudiced thereby. See Story’s Eq. Pl., §§ 40, 41, 42, Mitf. Pl., 38, 39 m. These rules do not preclude tbe complainant, if he is in doubt whether be is entitled to one kind of relief or another, from framing bis bill in the alternative, or with a double aspect, but preclude relief under tbe general prayer, upon facts not stated, or wholly different from those set forth in tbe bill: Mitf. Pl., 42, 43, and notes. See also Bedford v. Williams, 5 Col., 206, 207; Perkins v. Hays, Coop. Cooke, 163, Heis. Dig., 536-539. But if tbe allegation in tbe bill bad been sufficient to raise tbe question of fraud, tbe evidence in this case does not satisfy us that John H. Lacefield perpetrated a fraud in obtaining tbe deeds. It is clearly shown by tbe proof that be lived with, or at least attended to, tbe wants and business of bis father for a .period of about ten years after be attained bis majority, was exceedingly kind to him, and was a favorite son; and, although there is some conflict, as usual, in tbe proof as to the mental capacity of tbe father, it is clearly established by tbe weight of evidence, and especially • by tbe proof of tbe subscribing witnesses, and the *219 draughtsmen of the deeds, that be was sober and of sound mind when he executed them; and that complainant Merriman actually wrote and witnessed the receipt of June 2, 1868.
8. It is reasonably certain from the proof that John H. Lacefield paid to his father the various amounts mentioned in the deeds, with the exception of three hundred dollars, and that the notes for this amount, as well as for borrowed money, amounting in all to about $450, were surrendered to him by his father, not as advancements, but in consideration of his services for ten years, and the long cherished purpose of the father. The evidence shows that the old man was apprehensive of litigation in regard to his estate after his death; that he was anxious to have his business affairs adjusted, and that he executed the receipt with the view, probably, of preventing the anticipated controversy.
4. The considerations stated in the deeds, or otherwise proved, amounts in the aggregate to one thousand two hundred and sixty dollars, and the aggregate value of the lands is estimated by the witnesses at from two thousand five hundred to three thousand dollars.
In Hardeman v. Burge, 10 Yer., 204, it is said that “before a Court of Chancery can rescind a contract for inadequacy of consideration, it must be gross and shocking, such as is equivalent to proof of fraud in the transaction.” The proof in the case before us does not establish such inadequacy as to all or either of the deeds under consideration.
*220 5. Most of the complainants were examined as witnesses in this case; blit it is insisted in their behalf that Jane Lacefield, who was examined as a witness for the defendants, was an incompetent witness. She was clearly competent under the Act of March 13, 1868, c. 75, p. 94, which declares that “In all civil courts no witness shall be incompetent for the reason that he or she is a party to said cause, or may have an interest in the subject matter thereof.” The Chancellor’s decree was pronounced October 23, 1869, and consequently her deposition was taken before said act was amended by the Act of November 27, 1869, c. 19, p. 216.
In accordance with the views stated in Vincent v. Vincent, 1 Heis., 343, 344, we hold that the widow was entitled under the Act of March 19, 1860, c. 66, s. 3, to another horse in addition to the one she reserved; and under the Act of March 12, 1868, e. 85, ss. 2 and 4, to a homestead to the value of one thousand dollars, and under sec. 4 to two hundred and fifty dollars worth of propei’ty in addition to that previously allowed by law, and that the administrator shall account for the value of so much of said property as he sold, or caused to be sold, with interest thereon from the time of sale. The language of the Code 2288 is that “ The property exempt by law from execution shall, on the death of the husband, be exempt from execution in the hands of, and be vested in, the widow, without regard to the size or solvency of the estate of the deceased, for herself and in trust for the benefit of the children *221 of tlie deceased or of tbe widow, or of both, and shall not go to the executor or administrator.” [1]
The words, “ The property exempt by law from execution,” are not restricted to the specific articles enumerated in the Code, but embrace all property which may at any time be exempted by legislative enactment. It is a familiar rule of construction that “ a remedial statute shall be extended to later provisions by subsequent statutes.” Dwar. on St., 7 Law Lib., 723, m. And it is equally time, as remarked by Lord Mansfield, in Ailesbury v. Patterson, Doug., 30, that “ all acts in pari materia are to be taken together as if they were one law.” See also Badgers v. Bradshaw, 20 J. R., 735, 744. "With the policy of these statutes we have nothing to do. In expounding them, it is our duty to ascertain and give effect to the legislative will, and as to this we have no doubt. The exemption acts were inaugurated by the Act of 1820, c. 11, Nic. Car., 533, which was followed by the Act of 1833, c. 80. Ibid., 535; and from that time to the present, there has scarcely been a session of the legislature at which large additions have not been made to the number of exemptions. So late as the 31st January, 1871, an act was passed, entitled “An Act to Amend the Exemption Laws, and to comprise them all in one actin which, among many other things, a homestead is exempt from execution or attachment; and by the sixth section *222 of said act, it is 'declared tbat “ such property, on tbe death of tbe owner, shall be exempt in tbe bands of tbe widow and children, as prescribed in sections 2288-2290 of tbe Code; Acts 1870-71, c. 71, p. 97.” This act was approved February 1st, 1871, after tbe commencement of this suit; but it is in harmony with all tbe previous statutes on tbe subject, as well as with tbe case of Vincent v. Vincent, and seems to have been dictated by tbe same humane and enlightened spirit of legislation which in 1881 abolished imprisonment for debt.
Practical difficulties may occur in tbe administration of so much of these statutes as relates to tbe homestead, and tbe nature and extent of the homestead are not very clearly defined. It does not appear in this case whether tbe mansion bouse was assigned as part of the widow’s dower, or whether it is of greater or less value than one thousand dollars. If of greater value she would not, perhaps, be entitled to an equivalent. If of less value she would, in addition to one-third part of the real estate, be entitled to the mansion house, and so much land around it, or adjacent thereto, as, with the buildings, would amount in value to one thousand dollars. So much therefore of the Chancellor’s decree as is in conflict with this opinion will be reversed, and this cause will be remanded to the Chancery Court at Savannah, to the end that if it has not already been done, a homestead may be assigned to the widow, after the proper proof shall have been taken in the cause, and that the *223 administrator shall be held to account for so much of the property exempt by law from execution, as lie caused to be sold, or otherwise converted. In other respects the Chancellor’s decree directing an account as to the advancements is affirmed; and a sale of the land, after the assignment of dower, and the homestead will be directed in lieu of partition.
The costs of this cause in this Court will be paid, one half by the administrator, personally, and the other by his co-complainants, except the minor, who was also made and treated as a defendant. The costs of the Court below shall be paid as the Chancellor may hereafter determine.

 See as to the exemption whore there is no widow: Thompson v. Alexander, Knoxv. 1852, No. 93.