WILLIAM E. HAGAR, Administrator, *vs.* A. S. HAGAR and others.

## April Term, 1874.

VENDOR'S EQUITY—WAIVER.—A father, by deed, gave a tract of land to his son for life, "for his support and his only—not to pay any debts he has contracted or may hereafter contract," and, after his death, to his children forever, etc.; the land was intended as an advancement to the son, and was estimated at the time by the father as worth $300 more than his son's share of his estate, for which he took his notes, reciting on their face that they were given for land "which he now lives on," being the land in controversy. *Held*, that the vendor's equity or lien on the land was waived by the form of the deed, and that, if the parol testimony introduced was admissible, it preponderated strongly in favor of a waiver also.

*M. M. Brien*, for complainant.
*S. W. Childress*, for defendant.

THE CHANCELLOR:—On the 1st of April, 1868, Hollis Hagar the complainant's intestate, caused a small tract of land to be surveyed, and a plat made of it, and wrote under it an instrument, the material parts of which are as follows: "The foregoing plat of land on, etc., I give to my son, A. S. Hagar, during his life-time, for his support and his only—not to pay any debts he has contracted or may hereafter contract; and after my son's (A. S. Hagar's) death, then the foregoing land to go to his children forever; and, also, in the event should A. S. Hagar leave a widow, she may also enjoy the benefit of said land, together with the children, during her widowhood." Hollis Hagar died in 1871, and complainant, as his administrator, has filed this bill to subject the land to the satisfaction of two notes and a due-bill of the said A. S.

Hagar to the intestate, given, as alleged, for said land, under the following circumstances : " The intestate, at the time of said gift, considered that he was giving his said son, A. S. Hagar, in the tract of land, more by $300 than he could give his other children, * * * and, in order to make them equal, he took, at the time of making this. deed, the two several notes of the defendant A. S. for $100 each, and his due-bill for the same amount, all dated April 1, 1868 ; one of the notes being made payable on the 25th. of December, 1868, and the other on the 25th of December, 1869 ; on the face of each of which it is recited that they were given for land 'which he now lives on,' being the land conveyed as above."

The answer of A. S. Hagar admits the execution of the notes at the time of the making of the deed, but insists. that the intestate agreed that the notes should not be a lien on the land, and the deed was accordingly drawn as above, expressly so that neither the intestate nor any other creditor of A. S. Hagar could sell it. The proof clearly establishes. the fact that the intestate, at the time he made the convey-- ance, computed the value of the land conveyed to be more than A. S. Hagar's share in his estate by $300, and that the notes were given for this excess. A. S. Hagar himself so states the fact in a deposition taken in another case.

The attesting witnesses to the deed of Hollis Hagar are Brice McFall and J. R. Hagar. They are both examined in this cause. The first states that he ran out the land at. the request of Hollis Hagar, who said he was going to let A. S. Hagar have it. When he had run out the land he returned to the house and found that Hollis Hagar had prepared the deed, which he signed in the presence of the witness. He had also drawn up the notes in controversy, but A. S. Hagar refused to sign them, saying, " if there was any money to pay he did not have it.". Hollis replied, " I do not want the money, I want the work." A. S. Hagar again objected that he did not want the notes to be

on him. To which Hollis replied, "I want the work when I need it." After this the notes were signed. The witness adds that Hollis said that he did not intend that the land should be sold for any debts his son had contracted or might contract. That, sometime after, Hollis explained that he took the notes because his son was a better workman—meaning mechanic—than any of the rest of his children, and he wanted him to do his work. He also said to the witness that after he was dead he would want no more work, and then he wanted the notes dead also, but that he did not wish his son to know that the notes were not to be collected, until after his death, for if he did he wouldn't work for him. He also said he did not want his other children to know anything about it either.

The other attesting witness, who is also a son of Hollis. Hagar, says he was sent for by his father, and found him, A. S. Hagar, and McFall in the house; that his father said he had given A. S. a certain amount of land, calling for a certain cross-fence; "then he said there were fifteen acres besides what he had given him, which he had sold him at $20 per acre, and he had given him his notes for it," showing them. He valued the land given at $1,000, and the whole was included in one deed, both that sold and that given. The other attesting witness is interrogated as to this part of J. R. Hagar's deposition, and says he has no recollection of any such conversation; that the old man said to J. R. Hagar: "Here's a deed that I have made to Tim (A. S.) Hagar; I want you to witness it, and I want you to be a protector, or guardian, or something."

The defendants have introduced the testimony of two or three witnesses who conversed with Hollis Hagar on the subject of the deed, on the day he acknowledged it for registration, all of whom testify that the old man explained to them the clause in the deed, that the land was not to pay any debts his son had contracted or might contract, and said that he nor any other creditor could go upon the land; that

he held his son's notes merely to get him to work.for him while he lived, but that after his death the notes were to be dead also. Other witnesses speak of admissions to the same effect at other times. The only evidence in conflict is the statement of one or two witnesses who say the old man spoke of the land being bound for the notes, and two or three witnesses who speak of a particular occasion, while the old man was on his death-bed, when he directed the notes he held against his sons, and, among others, these notes, to be collected after his death.

When this case was before me on the demurrer, I had great doubt whether I ought not to consider the language of the deed itself as conclusive upon the point raised in this case. Further consideration has greatly strengthened that doubt. For the instrument purports on its face to be a gift, and expressly provides that the land conveyed shall not be liable to pay any debts the son has contracted or may contract. But, at any rate, it is clear that the wording of the deed is strongly presumptive of a gift, and not a sale, and the testimony ought to be very satisfactory to change the transaction into a sale, if such testimony could be received at all. It is also clear that the peculiar wording of the deed, expressly providing that the land should not be bound for the debts of his son theretofore contracted, or thereafter to be contracted, was itself persuasive that the grantor intended to waive the vendor's equity. The proof, instead of overturning this presumption, is still stronger in favor of an absolute waiver. It is well settled in this state that the presumption for or against the vendor may be rebutted by proof. *Campbell* v. *Baldwin*, 2 Humph. 248 ; *Thompson* v. *Dawson*, 3 Head, 384 ; *Burson* v. *Dosser*, 1 Heisk. 759. And Chancellor Walworth, after an able review of the authorities, concludes that the presumption for or against the lien, implied from the facts, may be rebutted by proof of a different agreement. *Fish* v. *Howland*, 1 Paige, 20, 30. The evidence in this case, if admissible, greatly pre-

ponderates in favor of an express waiver. *Jennings* v. *Jennings* 2 Heisk. 287.

The bill must be dismissed, but the costs will be divided, the estate paying one-half and A. S. Hagar the other half.

NOTE.—Upon appeal this decision was affirmed.