## W. B. RAINS *vs.* JAMES V. HAYS and others.

### October Term, 1876.

ADVANCEMENT—WHAT WILL CONSTITUTE.—To constitute an advancement there must be an intention on the part of the parent to make an advancement, and the gift must be to the child, or to a third person with the consent of the child.

ADVANCEMENT—MONEY PAID AS SURETY.—Money paid by the father as surety of his son-in-law is not chargeable to the daughter as an advancement.

ADVANCEMENT—GIFT OF LAND TO A SON-IN-LAW.—The mere fact that a father has conveyed land to his son-in-law for a nominal consideration will not, without more, be sufficient to charge the daughter, or, if she be dead, her son, with the value of the land as an advancement.

*T. W. Haley*, for complainant.

*T. H. Malone*, for defendants.

THE CHANCELLOR :—In the year 1875, Willeford H. Rains died in this county, intestate, leaving, as his heirs at law and distributees, four sons, one daughter, the wife of James V. Hays, and a grandson, Willeford E. Matlock, the son of a deceased daughter of the intestate by John G. Matlock. The bill is filed by one of the sons against the other heirs for an

account of the advancements, and for a division of the estate among the parties entitled. On the 7th of December, 1868, the intestate had conveyed to John G. Matlock, his son-in-law (the intestate's daughter, the wife of Matlock, being then alive), a tract of land in fee, reciting a consideration of $5, the land being then worth about $3,000. The intestate's daughter, the wife of Matlock, afterwards died in the life-time of the intestate. The principal question submitted to me is whether the grandson, as representing his mother in the division of the intestate's estate, shall be charged, by way of advancement to her, with the value of the land so conveyed.

It was early settled in the construction of statutes for the collation of advancements that, although the word child be used to designate the person required to collate, yet where a child is advanced by the parent, and dies leaving issue, such issue, claiming a share in the grandfather's estate, must account for the advancement. *Proud* v. *Turner*, 2 P. W. 560. It was also settled early, after repeated hearings by the Lord Chancellor, assisted by the master of the rolls, the chief justice of the king's bench, and an associate justice, that a contingent provision for a child in a marriage settlement is an advancement *pro tanto*. *Edwards* v. *Freeman*, 2 P. W. 435. In *Weyland* v. *Weyland*, 2 Atk. 635, the far more difficult question was presented to Lord Hardwicke, whether a settlement upon a son, with limitations to his wife and children, should be considered as an advancement, and to what extent. There the father, on the marriage of the son, settled annuities on himself for life, then on his wife for life, remainder to his son for life, with remainder to his son's wife for life, with remainder to the issue of the marriage. It was held that, not the son's estate for life only, but all the limitations in the settlement to his wife and children, must be considered as part of that advancement, and the whole fund brought in accordingly. "The intent of the statute," said his lordship, "was to make all equal; and if a daughter's portion was covenanted

by her husband to be laid out in land and settled, it would
be very strange if that should make any alteration, or give
her a better right to the residue of her father's estate.   So,
if the son had died in the life of the father, leaving children,
if his advancement only was to be brought in, they would
be obliged to bring nothing into hotchpot, and yet would be
entitled to an equal share with his other children, which
would be directly contrary to the intent of the statute."   It
was upon the strength of this decision that the supreme
court of Kentucky based their ruling in *Barber* v. *Taylor*,
9 Dana, 84.   The facts of that case were that the father
placed his son-in-law and wife in possession of the land, in
1814, under a verbal assurance that he would convey the
legal title to the son-in-law; that they lived on the land
until the wife's death, in January, 1833, and in June of the
same year the intestate conveyed to the son-in-law the legal
title to the land, reciting in the deed " that he conveyed the
land as a part of the portion " he had given his son-in-law
with his daughter.   The court held that the daughter's chil-
dren must account for the value of the land as an advance-
ment at the date of the deed.   The decision is put on the
ground of the " father's intention."   What he intended as
an advancement, say the court, and would have so treated at
his death, should generally, if not invariably, be so consid-
ered, without regard to the mode of making or of securing
the actual enjoyment of it, concerning which he should be
the sole arbiter.   A gift of money, they add, or other per-
sonalty, to the daughter would, " if not otherwise intended,"
be an advancement to her, though the husband, by wasting
or losing it, might deprive the daughter of any advantage
from it.   In *McClure* v. *Evans*, 29 Beav. 425, it was taken
for granted that a gift of money to the son-in-law might be
chargeable as an advancement, if so intended, and that the
declarations of the father at the time, or subsequently, were
admissible to show the character of the act.   The American
authorities are in accord upon the question of the competency
of the donor's admissions at the time of the act, to prove

the intention to make an advancement. *Jennings* v. *Jennings*, 2 Heisk. 286; *Meeker* v. *Meeker*, 16 Conn. 387; *King's Estate*, 6 Whart. 370; *Mitchell* v. *Mitchell*, 8 Ala. 414. But it seems doubtful whether subsequent declarations of the father, in the absence of the child, are binding on the latter. *Porter* v. *Allen*, 3 Barr, 390; *Fellows* v. *Little*, 46 N. H. 27; *House* v. *Woodard*, 5 Coldw. 201; *Merriman* v. *Lacefield*, 4 Heisk. 215.

That the intention of the testator is all-controlling in such cases is strikingly evinced in *Hedges* v. *Hedges*, Pr. Ch. 269; reversed in 1 Bro. P. C. 254, a case arising under the custom of London which secures to the children a portion of the parent's estate. There a freeman of London, having children by different wives, and intending to give two of them a preference, bequeathed to them by his will a bond of £3,000 as a specific legacy. And, the more effectually to carry out the intent, he delivered up the bond and took another for the same sum in the name of a third person, whom he directed to keep the bond for the legatees. Afterwards, and in his last sickness, the brother of his wife, "a gentleman at the bar," coming to see him, the freeman requested him to insert the name in the will which had been omitted, for which purpose the will was produced; and this gentleman, being told that the bond given by the will had been surrendered, and a new bond taken in trust for the legatees, drew a line through the words of the specific bequest, saying "that the same, being so given as aforesaid, ought not to stand in the will," and then acquainted the testator with what he had done, and his reason for doing it, and desired him to republish the will, which he did, wholly relying on the other's judgment. The evidence was clear that neither the testator nor the visitor, who was the uncle of the children, intended to interfere with the preference made in favor of the two children. The Chancellor, Lord Cowper, although he said he believed the intention of the testator was not to make an advancement, yet required the donees to bring the fund into collation. "If men,"

he said, "will deliberately lay down premises, and from thence draw false conclusions, this court has no jurisdiction to set right such mistakes; and though the testator thought that, notwithstanding this advancement, they would come in for an equal share with the rest of his children, yet it is plain that both he and his lawyer mistook the law and the custom of London." On appeal, the House of Lords reversed the decision, upon the ground, as shown by the argument, of the obvious intention by what was done not to make an advancement—that is, a gift by anticipation—of what it was supposed the children would be entitled to on the death of the parent. *Cawthon* v. *Coppedge*, 1 Swan, 487.

Our statutory provisions on the subject of advancements are very full and complete, securing equality in the division of the real and personal estate, whether the advancement be in realty or personalty. Code, §§ 2431 to 2435. They do not, however, undertake to give definitions or regulate details. These are left to be ascertained upon general principles and the decisions of the courts. The only case in our reports which bears directly upon the state of facts before us is *Cawthon* v. *Coppedge*, 1 Swan, 487. There the intestate, by deed reciting the consideration of love and affection for grandchildren, conveyed two slaves to the grandchildren by name, "reserving the use of the same" to the donor's daughter, the mother of the donees. It was held that the mother was not chargeable with the value of the use of the slaves thus reserved as an advancement. The court concede that the gift, by a parent to his daughter, of a life interest in slaves, with remainder to her children, would be an advancement to the value of such life interest at the date of the gift. They put their decision in the case upon the ground that, "by the express terms of the deed, the gift is of a present, absolute interest to the grandchildren," and that the reservation of the use is not such an estate as would rest in the husband, *jure mariti*, or be liable for his debts. See *Shiver* v. *Brock*, 2 Jones Eq. 137.

43

The intimation, although only a *dictum*, in this case is that a gift to a daughter for life, with remainder to her children, is only an advancement to the extent of the value of the life estate. This is directly in the teeth of the ruling of Lord Hardwicke in *Weyland* v. *Weyland*, 2 Atk. 635, cited above. It is true, in the latter case the gift was embodied in a settlement made on the marriage of the son, from which it might be inferred that the whole gift was intended as an advancement; whereas in the former case only an ordinary deed of gift is supposed, from which no inference of intention can be drawn, except to the extent of the actual benefit conferred upon the child. But, if there be any such distinction, it did not occur to Lord Cottenham in *Dillon* v. *Coppin*, 4 Myl. & Cr. 647, 669. For in that case the deed recited that the conveyance was made by the father with a view of making some provision for his daughter, her husband and children; yet when *Weyland* v. *Weyland* was cited in argument to sustain the position that the whole estate conveyed must be brought into hotchpot, his lordship said : "You must carry your proposition to this extent, that if a father settles property on a grandchild, and the child gets nothing, yet the child must account for it." The point was not decided, but his opinion was against the propriety of charging the child with more than the value of the benefit actually conferred on that child. This was the view of our supreme court, in *Cawthon* v. *Coppedge*, and is manifestly the dictate of common sense. The father cannot make an advancement to a child by a gift to somebody else, merely because he chooses to say that it is intended as a gift of what he supposed would be the share of the child in his estate at his death. Nor can he deprive her of the right of collation by declaring that she has been fully advanced. *Chace* v. *Box*, 1 Eq. Ca. Abr. 155 ; *Annand* v. *Honeywood*, 2 Freem. Ch. 56. To make an advancement, the intention and gift must concur. *Yancy* v. *Yancy*, 5 Heisk. 357. The gift alone will not suffice where the intention is clear to the contrary, as in *Hedges* v. *Hedges*, *ubi supra*. Still less will

the intention, no matter how clear, if in fact the gift is to some person other than the child. And so it has been held where the gift was, as in this case, to a son-in-law. *Jones* v. *Spaight*, 2 Murph. 89 ; *Dixon* v. *Coward*, 4 Jones Eq. 354. If, indeed, the child accept the gift as an advancement, and consent that the conveyance be made to a third person, the result might be otherwise. And, perhaps, the consent might be implied. *Bridgers* v. *Hutchins*, 11 Ired. 68. It is upon this ground that the Kentucky case of *Barber* v. *Taylor* can be sustained, if it can be sustained at all. There the father, upon putting his daughter and son-in-law in possession of the land, had promised to make a deed to the son-in-law, the assent of the daughter being implied. The land was, however, charged as an advancement as of the date of the conveyance, which was after the daughter's death, and in that view the right of assent would seem to have been in her children. The principle of the decision rests upon the consent of the daughter as well as the " father's intention." And such was the actual ruling in *Dittoe* v. *Cluney*, 22 Ohio St. 436.

In the case before us, the land, the value of which is sought to be collated, was given to the husband by deed, without, so far as appears, either the consent or knowledge of the wife. The instrument is an ordinary conveyance in fee, reciting a consideration of $5, and no other consideration. It does not purport on its face to be an advancement to the daughter, or, " as a part of the portion." Nor is there any parol evidence to supply the omission, if it be one, and to show that the act was dictated by any such intention on the part of the parent. There is no evidence whatever, contemporaneous with the execution of the conveyance, explaining it in any way. The only testimony bearing on the point at all is the solitary statement of a witness that, after the deed had been made, he heard the grantor say " that he was going to deed the land to his daughter," Matlock's wife, " but that Matlock got to cutting up about it, and said he wouldn't go on it, or have any-

thing to do with it, unless the deed was made to him.''
The testimony is, probably, not competent, under the ruling
of our supreme court in *Merriman* v. *Lacefield*, 4 Heisk.
215, and the weight of American authority cited above.
But, if it were competent, it does not show that the convey-
ance was intended by the grantor as a part of the portion of
the daughter, much less that she ever consented to a gift,
in that form, by way of advancement of what it was sup-
posed she would be entitled to on the death of her father.

I am clearly of opinion that the record does not make
out such a state of facts as justifies me in charging the
grandson with the value of the land conveyed to his father.

The rule is not so strict in the advancement of personal
property. *Bridgers* v. *Hutchins*, 11 Ired. 68; *Youngblood*
v. *Norton*, 1 Strobh. Eq. 127; *McClure* v. *Evans*, 29 Beav.
423. The reason is that, no matter how formal the gift or
conveyance may be to the daughter, the property becomes
the property of the husband, and a direct delivery to him
could make no difference as to her. But even in such cases
the intention to make an advancement should appear.
*Ravenscroft* v. *Jones*, 32 Beav. 671.

The only remaining question is whether one of the
daughters of the intestate is to be charged as an advance-
ment with money paid by the father as the surety of her
husband. The record shows that the husband was solvent
when his father-in-law went his security, and that the latter
was compelled to pay the debt because of the subsequent
insolvency of the former, and much against his will. In the
absence of any proof of intention to make an advancement,
once a debt always a debt would seem to follow as of course.
It was so held, as between a father and son, in *Vaden* v.
*Hance*, 1 Head, 300. And although the ruling is exactly
reversed in *Johnson* v. *Hoyle*, 3 Head, 56, yet, as the decis-
ion is expressly based on the preceding case, it is obvious
that the last opinion is a mere slip of the memory. The
earlier case was followed in *House* v. *Woodard*, 5 Coldw.
196, with an intimation that statements of the father,

made after the creation of the debt, if admissible at all, must be very clear to change the rule. Long ago Lord Chancellor Finch (Nottingham) had refused to allow a debt to be changed into a gift by proof of a subsequent declaration to that effect. " For," said he, in his usual pithy style, " if it were a debt at first to the decedent, he shall not afterwards talk himself out of it." *Phillips* v. *Phillips,* 2 Freem. Ch. 11.

The indebtedness of the son-in-law to the intestate cannot be charged to the daughter as an advancement.