THE STATE v. JAMES A. GOLDMAN.

1. ILLEGALLY PRACTICING MEDICINE.—An indictment for unlawfully engaging in the practice of medicine, must allege that it was done without a diploma, or without having a certificate of qualification from some authorized board of medical examiners, as provided in the statute, (Paschal's Dig., art. 7200,) or without having practiced five consecutive years in the profession; and it must be alleged that the accused resided or sojourned in the county where such indictment was presented.
2. ACT TO REGULATE THE PRACTICE OF MEDICINE.—The provisions of the act discussed and construed.

APPEAL from Wood. Tried below before the Hon. Z. Norton.

The grand jury of Wood county, at the November Term, 1874, of the District Court, presented an indictment charging that "one Doctor Goldman did, on October 10, 1874, in Wood county, unlawfully engage in the practice of medicine in its various branches and departments as a means of livelihood, without first having attended a regular course of study and lectures at some regularly-established and well-conducted and accredited medical college, and received the degree of Doctor of Medicine, and without first having obtained a certificate of qualification from the board of medical examiners in and for the said county of Wood, he, the

said Doctor Goldman, not then and there having been regularly engaged in the general practice of medicine in said State of Texas for a period of five consecutive years in the county of Wood next before the finding of this indictment."

Exceptions were sustained to the indictment and the State appealed.

*A. J. Peeler, Assistant Attorney General,* for the State.

MOORE, ASSOCIATE JUSTICE.—It was evidently the intention of the Legislature by the act to regulate the practice of medicine, passed May 16, 1873, to prohibit all persons from engaging in the practice of medicine in any of its branches as a means of livelihood who have not attended a course of study and lectures in some regularly-established and well-accredited medical college, and received the degree of " Doctor of Medicine," or who have not received a certificate of qualification from some authorized board of medical examiners organized in pursuance of said act.     But while the object and purpose of the act is plain and unmistakable, it must be confessed that it is most crudely and inartificially drawn, and hence occasions embarrassment and uncertainty in its application and enforcement.     That we may the more readily see how this should be done, it will be well to consider the purpose in view in the enactment of each of its different sections.

Sec. 1 forbids all persons not having the required qualification prescribed by the law from practicing medicine in the State as a means of livelihood.

Sec. 2 prescribes what must be done by those who are permitted to engage in the practice of medicine where they reside or sojourn, to establish their right to the privilege secured them by the law and secure immunity from the penalty for its violation.

Sec. 3 provides for the organization in the several counties in the State of boards of medical examiners for the ex-

amination and giving certificates of qualification to such persons as wish to engage in the practice of medicine, who have not attended a course of study and lectures and received the degree of " Doctor of Medicine " from some well-accredited medical college.

It is inferable from this section, which provides that in counties where no boards are formed, physicians practicing therein may apply to the nearest medical board to their respective counties, that applicants for certificates of qualification should apply to the boards of the counties in which they reside or sojourn when under the law it is necessary for them to procure a certificate.

Sec. 4 requires the boards to meet semi-annually, that notice of the time and place of meeting shall be given, and also that any member may give a temporary license or certificate.

Sec. 5 declares the violation of any of the provisions of the act to be a misdemeanor, and imposes a penalty for the offense, one-half of which is to be paid to the prosecutor and the other half to the county treasurer. It then provides that nothing in the act shall be so construed as to apply to those who have been regularly engaged in the practice of medicine in this State, in any of its branches or departments, for a period of five consecutive years in their respective counties, nor to females who follow the practice of midwifery, strictly as such.

The evident purpose of the law was to guard and protect the public from being imposed upon by empirics and quacks without knowledge or skill fitting them to undertake the important and responsible duties which are necessarily devolved upon physicians, of whose qualifications and fitness for their discharge the general public are unable to judge. To do this it is required that all persons engaging in the practice of medicine in any of its branches, who had not been regularly in its practice in their respective counties for five years consecutively before the passage of the law,

should be accredited as qualified by having a "diploma" from a medical college, or a certificate of a board of medical examiners. Either sufficiently attested the qualification of those to whom they are granted. They are in contemplation of the law of equal weight as evidence of their fitness. When a party has received the degree of "Doctor of Medicine" from an established and well-accredited college, no matter where he may go throughout the State or whatever may have been its date, he is not required to produce any other evidence of his qualification. So when he has been examined by an authorized board of medical examiners and has received a certificate of qualification, he is not required to undergo a subsequent examination, nor furnish at any time any other additional proof of his qualification. That the public may know that those who offer to practice have the qualification required by law, and the more easily and certainly to detect and punish such as undertake to practice without such qualification, it is required that all practitioners shall file with the clerk of the District Court of the county in which they reside or sojourn a "diploma" or certificate of qualification from some authorized board of examiners.

It is a matter of doubt whether an indictment can be maintained for practicing medicine in violation of the provisions of this law, which does not substantially aver that the defendant had not, within twenty days from the date of his entering upon such practice, furnished to the District Court of the county where he sojourns or resides his "diploma" or "certificate of qualification." Evidently, if the indictment is framed upon the first section of the act, its negation of defendant's qualification must be broad enough to meet its full requirements. In this respect the indictment in this case is fatally defective. The difference between it and the statute is obvious. The indictment charges that the defendant "did then and there unlawfully engage in the practice of medicine, * * * * without first having

obtained a certificate of qualification from the board of medical examiners of Wood county,'' while the statute forbids him from engaging in practice " without having a certificate of qualification from some authorized board of medical examiners, as hereinafter provided.''

To harmonize the charge in the indictment with this section of the statute, it must be shown that before a physician who has no " diploma '' can practice in any county in the State he must obtain a certificate from the medical board of that county, or if a board has not been organized in it, then from the nearest medical board to such county. But this is plainly at variance with the whole tenor and import of the law. Boards of medical examiners are to be organized in each county, and it may be those wishing to be examined were expected or even required to apply to the board in the county of their residence, still such boards are not local or county boards. Their certificate is evidence of qualification, like a diploma, throughout the State. It could not be supposed that the practice of all physicians would be confined to the limits of their counties, yet they are only required to file a " diploma '' or " certificate of qualification '' in the county where they sojourn or reside. And admitting that the applicant must get a certificate from the board in the county where he resides when he first engages in practice, it is surely not contemplated that he will always remain in the same locality; still no provision is made requiring him to undergo re-examination and obtain another certificate in the county to which he removes. The most that is required of him in such case is that he file his " diploma '' or certificate of qualification with the clerk of the District Court of said county. And if he is even required to do this, it is not by the letter of the law, but must rather be inferred from its general import and the object sought to be accomplished by its enactment.

Nor does the indictment allege that the defendant resides or sojourns in Wood county. He may, for anything that

appears to the contrary, reside in an adjoining county, have been examined and obtained a certificate of qualification from the board and filed it with the clerk of the District Court of said county, and, as alleged in the indictment, have entered upon the practice of medicine in Wood county. If so, he has not violated the law, and cannot be subjected to its penalty.

The court did not err in quashing the indictment, and the judgment is therefore affirmed.

AFFIRMED.