STATE OF MINNESOTA *ex rel.* David F. Powell *vs.* STATE MEDICAL EXAMINING BOARD.

July 19, 1884.

**Practice of Medicine—Power of State Medical Examining Board—Refusal of Certificate—Right of Applicant to a Hearing—"Unprofessional Conduct"—Constitutionality of Act—Mandamus.**—The legislative act of 1883, regulating the practice of medicine, requires, as a condition of the right to practise as a physician, (except as to those who have been engaged five years in practice in this state,) a certificate of qualification from the faculty of the medical department of the state university. Section 9 of the act authorizes this board to refuse such certificate to those guilty of "unprofessional or dishonorable conduct." The relator was refused a certificate, upon the ground that, as the board determined, he was guilty of unprofessional and dishonorable conduct. *Held:*

(1) The applicant had a right to be heard upon the investigation as to his conduct.

(2) The word "unprofessional," in section 9, is used convertibly with "dishonorable," having a like meaning.

(3) The act is not unconstitutional.

(4) The relator is not entitled to a remedy by *mandamus* to secure a review of the correctness, or the reversal, of the determination of the board.

Appeal by the relator from an order of the district court for Ramsey county, *Simons*, J., presiding, quashing an alternative writ of *mandamus*. The case made by the pleadings is stated in the opinion.

*Sleeper & Donaldson*, for relator.

*W. J. Hahn*, Attorney General, for respondent.

DICKINSON, J. The relator seeks by *mandamus* to compel the State Medical Examining Board to issue to him the certificate required by chapter 125 of the laws of 1883, to authorize him to practise the profession of a physician in this state. He has appealed from an order of the district court quashing an alternative writ.

The act referred to creates a board of medical examiners, consisting of the faculty of the medical department of the university of Minnesota. It requires all persons, except such as have been practising medicine five years within the state, as a condition of the right to practise, to procure from this board its certificate or diploma. "Graduates in medicine" are to receive a certificate, upon their diploma being presented to the board and found to be genuine. Other applicants for certificates are required to pass a satisfactory examination before this board. Section 9 of the act contains this provision: "The board of examiners may refuse certificates to individuals guilty of unprofessional or dishonorable conduct, and they may revoke certificates for like causes."

It appears that the relator applied for a certificate from the board, presenting a diploma, which was found to be genuine, showing that he was a graduate of the Louisville (Kentucky) Medical College, in which institution he had passed the prescribed course of study. His application was refused only upon the ground that, as the board considered and determined, the relator was guilty of unprofessional and dishonorable conduct, and was at that time conducting himself in an unprofessional and dishonorable manner, in advertising himself

through the newspapers and by circulars to be a medicine man of the Winnebago tribe of Indians, adopted by that tribe, and assuming the name of "White Beaver;" and claiming in such publications the proprietorship of certain specific remedies, one of which he claimed would cure cholera morbus when taken internally, and rheumatism when applied externally; which claims are alleged by the respondents to be untrue and impossible.

We first consider the question as to the constitutionality of that part of the act (section 9) upon which the refusal of the board to grant its certificate is based. The relator urges this objection upon the grounds that the act gives to the applicant no opportunity to be heard in his own defence in relation to any charge of unprofessional and dishonorable conduct, and that by its enforcement he is deprived of his property without due process of law. These objections to the validity of the act cannot be sustained. The vocation of the physician is in itself a lawful one, and the right of any person to engage in it is only subject to such restrictions as the legislature may impose in the exercise of its general police power. While, therefore, the right to engage in this practice is a qualified one, even that qualified right is not to be arbitrarily, and without reason, denied. It is so opposed to the principles of the common law that any fact affecting the rights of an individual shall be investigated and determined *ex parte*, and without opportunity being afforded to the party to be affected thereby to be heard,—4 Bl. Comm. 282, 283; *State* v. *Bryce*, 7 Ohio, (pt. 2,) 82; *Murdock* v. *Phillips Academy*, 12 Pick. 244,—that this act should not be construed as contemplating such a proceeding unless that purpose is expressed in the plainest terms. While the act does not prescribe the manner in which the proceedings for the determination of the matters referred to in section 9 shall be conducted, there is nothing to indicate that it was intended that such investigations, and the determination of the fact, should be made *ex parte*, or without reasonable opportunity given to the party interested to be heard. The contrary conclusion is rather indicated by the requirement that the board shall "take testimony in all matters relating to its duties," and by the fact that a right of appeal from the determination of the board is conferred.

It may be stated as a general proposition that any person has the right to pursue any lawful calling, but in respect to certain occupations, not in themselves unlawful, this right is necessarily subject to legislative restrictions from considerations of public policy. In the profession of medicine, as in that of the law, so great is the necessity for special qualification in the practitioner, and so injurious the consequences likely to result from a want of it, that the power of the legislature to prescribe such reasonable conditions as are calculated to exclude from the profession those who are unfitted to discharge its duties, cannot be doubted. *Hewitt* v. *Charier,* 16 Pick. 353; *Spaulding* v. *Alford,* 1 Pick. 33; *Wright* v. *Lanckton,* 19 Pick. 288; Cooley, Const. Lim. 745. Statutes for the accomplishment of this purpose have been very common, containing provisions similar to those found in this act; that is, requiring, as a condition of the right to practise the profession, that the practitioner shall be a graduate of an institution for medical instruction, or shall have a certificate of his qualification from some recognized body of men learned in the science. Such requirements have been incorporated into the laws of Massachusetts, Maine, New York, Ohio, Illinois, Alabama, Georgia, and Texas, and probably in other states, and their validity has never, we think, been judicially denied; nor, as we understand, does the relator question it here.

But the legislature has surely the same power to require, as a condition of the right to practise this profession, that the practitioner shall be possessed of the qualification of honor and a good moral character, as it has to require that he shall be learned in the profession. It cannot be doubted that the legislature has authority, in the exercise of its general police power, to make such reasonable requirements as may be calculated to bar from admission to this profession dishonorable men, whose principles or practices are such as to render them unfit to be intrusted with the discharge of its duties. And as the duty of determining upon these qualifications, both as to learning and skill, and as to honor and moral fitness, must from necessity be committed to some person or body other than the legislature, we see no reason why it may not be committed to the legally-constituted body of men, learned in this profession, named in this act.

We are referred to no decision, and we have found none, sustaining the position of the relator, that an adverse determination of such a body upon such a question, by reason of which the applicant is precluded from engaging in the practice of his profession, deprives him of his property without due process of law, or that such enactments are for any reason unconstitutional. On the contrary, such enactments have been repeatedly enforced, and their constitutionality sustained, in cases involving a consideration of those provisions relating to the mode of determining the qualification of the practitioner in respect to learning. See cases above cited; also *Thompson* v. *Staats*, 15 Wend. 395; *State* v. *Goldman*, 44 Tex. 104; *Richardson* v. *Dorman*, 28 Ala. 679; *Bibber* v. *Simpson*, 59 Me. 181.

The legislative requirement of a good moral character has also been sustained. *Thompson* v. *Hazen*, 25 Me. 104. See, also, *Wert* v. *Clutter*, 37 Ohio St. 347, 349. As has been already suggested, there can be no distinction, upon constitutional grounds, as to the mode of determining in regard to professional or intellectual fitness, and as to moral fitness for the profession. The means properly adopted by the legislature to determine the one, cannot be said to be unconstitutional when prescribed for the determination of the other.

We will add, as our construction of the words "unprofessional or dishonorable conduct," as used in section 9, that we do not think that the legislature contemplated matters of merely professional ethics, but that the term "unprofessional" was used convertibly with "dishonorable." The meaning may be expressed by using the conjunctive *and* in place of the disjunctive *or*. *Wert* v. *Clutter*, 37 Ohio St. 347–350; *Weston* v. *Loyhed*, 30 Minn. 221. It might, for instance, be deemed unprofessional for the members of one school of medical practice to consult professionally with a member of a different school; but such matters are not within the plain purpose of the act, which was the affording of protection to the people against ignorant, unqualified, and unworthy practitioners of this profession.

Our conclusion being that the law under which the board acted was constitutional, it is apparent that the relator cannot, by *mandamus*, compel the issuing of a certificate to him. The action of the board is not merely ministerial, but partakes of a judicial character.

It is to inquire concerning and to determine as to the existence of certain facts, and whether it should grant a certificate of qualification to an applicant must depend upon that determination. The board has not refused or neglected to act upon the matter submitted to it. It has decided upon the application, and the correctness of that decision, involving the exercise of the judgment of the members of the board, cannot be brought into review by this proceeding, and is not properly before us. *The King* v. *Licensing Justices*, 4 Dowl. & R. 735; *The King* v. *Sheriffs of York*, 3 Barn. & Adol. 770; *Howland* v. *Eldredge*, 43 N. Y. 457. See *Matter of Dorsey*, 7 Port. (Ala.) 293; *People* v. *Judge of Wayne County Court*, 1 Mich. 359; *Hoole* v. *Kinkead*, 16 Nev. 217.

Order affirmed.