BISHEN SINGH v. THE STATE.

No. 1433.   Decided April 3, 1912.

Rehearing Denied May 1, 1912.

**1.—Unlawfully Practicing Medicine—Information—Complaint—Name of Affiant.**

Where the name of the affiant to the complaint upon which the information was based is at the bottom of the affidavit with the jurat of the officer taking it, the same was sufficient.

**2.—Same—Information—School of Medicine.**

The information need not allege the school of medicine to which defendant belongs or the method or system by which defendant effects cures and treats for pay, nor the particular branch or department of medicine defendant practiced. Following Antle v. State, 6 Texas Crim. App., 202.

**3.—Same—Information—Physician—Surgeon.**

It is not necessary to allege in the information that defendant professed

to be a physician or surgeon, where he was prosecuted under Section 13 of the Medical Act.

#### 4.—Same—Evidence—Check—Indorsement.

Upon trial of unlawfully practicing medicine, there was no error in introducing in evidence the check with which defendant had been paid, on the ground that there was no proof that defendant had written his name on the back of the check; the same being payable to the order of defendant and paid by the bank on which it was drawn.

#### 5.—Same—Evidence—Other Transactions.

Upon trial of unlawfully practicing medicine, there was no error to admit testimony that defendant had prescribed for others and received money therefor; and that he offered to make cures charging a certain amount of money therefor, the issue being whether he was treating and offering to treat diseases for pay. Following Germany v. State, 62 Texas Crim. Rep., 276.

#### 6.—Same—Argument of Counsel.

Where the remark of State's counsel was not such as to be in itself a ground for reversal and no special charge was requested withdrawing same, there was no error.

#### 7.—Same—Reading Law—Discretion of Court.

Where it was not shown that the defendant requested that the jury be retired while State's counsel read and discussed the law, there was no error. Following Germany v. State, 62 Texas Crim. Rep., 276, and other cases.

#### 8.—Same—Charge of Court—Prayer—Words and Phrases.

Under Section 13 of the Medical Practice Act defining the meaning of the words "practice of medicine," to be to treat or offer to treat disease by any system or method, there was no error in refusing a charge that if defendant used prayer only in his treatment and held himself out as treating disease through the will of God only, that this was not the practice of medicine; the court properly instructing the jury in the language of the statute.

#### 9.—Same—Constitutional Law—Police Power.

The Medical Practice Act of the Legislature is a reasonable exercise of the police power of the State, as it is provided that nothing in the law shall be construed so as to discriminate against any particular school or system of medical practice.

#### 10.—Same—Police Power—Public Health.

The subject of the public health being a matter subject to the police power of the State, the Legislature has the power to pass· laws requiring a certain amount of knowledge on given subjects, which it, in its wisdom, deems essential to the proper diagnosis and treatment of disease.

#### 11.—Same—Other Transactions.

The law does not denounce the treatment of each individual as a separate and distinct offense, but the offense defined is for a person to treat or offer to treat any disease or disorder without license, and the State is not confined to the party alleged in the information, but can offer evidence that defendant offered to treat or treated other people; especially where defendant denied this.

#### 12.—Same—Policy of the Law.

The Medical Practice Act does not only embrace persons who publicly profess to be physicians or surgeons, but all persons who shall treat or offer to treat disease, etc., for compensation, regardless of the mode or method used.

#### 13.—Same—Physicians—Laymen.

Anyone who holds himself out as a physician or surgeon is liable under the law if he has no license, whether he receives compensation or not, while

one who does not so hold himself out, must be shown to have received compensation either directly or indirectly; and where defendant held himself out as being capable of treating disease, and he received compensation for his services, and he had not complied with the law in submitting to the legal examination, the conviction is sustained.

### 14.—Same—Free Will Offering—Indirect Payment.

Where defendant claimed that he made no direct charge for his treatment of disease, but told all who applied for treatment, that he would receive free will offerings, he was nevertheless, receiving compensation within the purview of the law which provides that such compensation may be made directly or indirectly; besides, the evidence showed that he made direct charges for his treatment.

### 15.—Same—Original Papers—Practice on Appeal.

Upon appeal from a conviction of unlawfully practicing medicine, where the record disclosed that upon motion of the State, the court below ordered the original papers consisting of letter heads and printed circulars and cards to be sent up with the transcript, the Appellate Court could consider them; besides, they were also copied in the statement of facts.

Appeal from the County Court of Dallas County at Law. Tried below before the Hon. W. F. Whitehurst.

Appeal from a conviction of unlawfully practicing medicine; penalty, a fine of $100 and twenty days confinement in the county jail.

The opinion states the case.

*Israel Dreeben,* for appellant.—On the question that a check is no payment until actually collected: Cyc., vol. 30, pp. 1207-8; Olcott v. Rathbone, 5 Wend. (N. Y.), 491; Bradford v. Fox, 38 N. Y., 289; McGuire v. Bidwell, 64 Texas, 43; W. B. Mfg. Co. v. Maverick, 23 S. W. Rep., 728; Robinson v. State, 29 S. W. Rep., 788.

That a plea of not guilty puts in issue every material fact, and under it the burden never shifts from the State. Field v. State, 34 Texas, 39; White v. State, 11 Texas, 770; Martin v. State, 44 Texas, 172.

That the law permits no presumptions against a defendant in a criminal case: Harris v. State, 8 Texas Crim. App., 90; Ward v. State, 10 Texas Crim. App., 292; House v. State, 15 Texas Crim. App., 522; Lott v. State, 17 Texas Crim. App., 598.

The testimony of the prosecuting witness, T. E. Ball, that he purchased from appellant a package of "Azhaca," the same being a proprietary remedy and that appellant recommended it for the cure of the witness' catarrh, and all his evidence relative to that transaction was inadmissible against this appellant, in this case. General laws, Thirtieth Legislature, chapter 123, sec. 10; People v. Lehr, 63 N. E., 725; Commonwealth v. St. Pierre, 55 N. E., 482.

The court erred in refusing to give appellant's written special charge No. 1, which is as follows, to wit: "Gentlemen of the jury: You are charged and instructed that you can not regard the testimony of the witness Samuels for the purpose of convicting the defendant of offering to treat disease or offering to cure same." Dever v. State, 30 S. W. Rep., 1071; McKenzie v. State, 32 S. W. Rep., 543.

The court erred in refusing to give appellant's special charge No. 3, which was in writing as follows, to wit: "Gentlemen of the jury: You are hereby instructed that if from the evidence you believe that the defendant used prayer only in his treatment and held himself out as treating diseases through the will of God only, that this was not the practice of medicine, as defined by the statute governing the practice of medicine; and if you so believe, you will find the defendant not guilty." State v. Mylod, 41 L. R. A., 428; Bennett v. Ware, 61 S. E. (Ga.), 546; State v. Biggs, 64 L. R. A., 139.

*C. E. Lane,* Assistant Attorney-General, and *R. M. Clark,* County Attorney, and *Currie McCutcheon,* Assistant County Attorney, for the State.—On question of offering check in evidence: Gayson v. State, 51 S. W. Rep., 246; Gresser v. State, 40 S. W. Rep., 595; Chalk v. State, 32 S. W. Rep., 534.

On question of definition of legislative Act: Newman v. State, 58 Texas Crim. Rep., 223, 124 S. W. Rep., 956; State v. Marble, 70 L. R. A., 835; Nebraska v. Buswell, 58 N. W. Rep., 728.

HARPER, JUDGE.—The appellant was prosecuted under an information and complaint charging him with unlawfully practicing medicine under the act of the Thirtieth Legislature.

1. Appellant by his first bill of exception raises the question of the sufficiency of the information. He complains that the complaint is insufficient because it does not contain the name of the affiant in the body thereof. The name of the affiant is at the bottom of the affidavit and was the party making the same, with the jurat of the officer taking it, and this, we think, is sufficient. Affiant was T. L. Manion and he signed and swore to the affidavit before an assistant county attorney.

The appellant further contends that the information is insufficient because it did not set forth the school of medicine to which defendant is alleged to belong, and did not set forth the method or system by which it is alleged the defendant effects cures and treats for pay, and that the information is insufficient because it does not set forth the particular branch or department of medicine defendant practiced or is alleged to have practiced. In the case of Antle v. The State, 6 Texas Crim. App., 202, the court says: "As a general rule it is sufficiently certain to describe an offense in an indictment in the language of the Act creating the offense," and again, "we are of the opinion that the information charges the offense in substantially the language of the statute which creates the offense; that it is sufficient to charge that the accused did *practice medicine* and that it is not required that the particular branch or department of medicine be set out in the information; that the indictment or information charging the *practice* of *medicine,* it would be supported by proof of engaging in the practice of medicine in any of its branches or departments, the act being otherwise unlawful."

The appellant further contends that the information does not allege that he professed to be a physician or surgeon. This is not necessary as the defendant was charged under the second *definition* of the practice of medicine, which is as follows: "Section 13. Any person shall be regarded as practicing medicine within the meaning of this Act . . . (2) who shall treat or offer to treat any disease or disorder, mental or physical, or physical deformity or injury by any *system* or *method* or to effect cures thereof and charge therefor, directly or indirectly, money or other compensation." The court did not err in overruling the motion.

The State introduced T. E. Ball as a witness, who testified that he carried his wife to Dallas to be treated for a tumor and cancer of the stomach; that he was induced to go to the defendant, and defendant told him he could treat and cure her, and that he agreed to pay him thirty dollars to treat his wife. He described the treatment given by appellant, which included present and absent treatments, stating that appellant would rub the palms of his hands together; that he would lay his hands on the tumor, then draw his hands across the tumor; that he repeated this a number of times, and would throw his hands as if casting it behind him, telling her the tumor would go away. He was about thirty minutes in giving the treatment. As to the absent treatment, he told her at a given hour "to look at a picture he had, and to lay straight out, and put her mind on that and be quiet, and not let any noise or person bother her at all." He said he paid him thirty dollars, and asked him for a receipt, and he answered he never gave receipts, saying he could not collect debts by law. The witness identified a check, saying he wrote the check and gave it to defendant to pay for one week's treatment of his wife. The check read:

"Farmersville, Texas, May 24, 1911.
Farmers & Merchants National Bank. .
    Pay to Bishen Singh                    or order                    $10.00
Ten ($10.00) .................................... ...... Dollars.
    1 week's medical treatment for wife.
                                        (Signed) T. E. Ball."

The check was marked "paid May 29, 1911," and on the back was endorsed "Bishen Singh." He also identified a card, circular and letterhead given him by appellant. On the card on one side was a picture of a man, with some hieroglyphics below, followed by the words "Bishen Singh" (Hindu) Punjab, East India. On the reverse side is a building, with the words, "You are invited to call at the Hindu Temple of Science and Health. The only one of its kind in America. Yogi Philosophy—Psychic Healing—Health—Success—Happiness. Consultation free. Phone M. 6583. 226 Ross Ave., Dallas, Texas." On the circular is a picture of a house, followed by the words:

"HINDU TEMPLE

of

SCIENCE AND HEALTH.

(The only one of its kind in America)

Yogi Philosophy—Psychic Healing

The Ancient Methods of the Old Masters and Adepts, used in the treatment of Diseases of the Body and Mind.

When all other means have failed to restore you to health and happiness

GO TO THE HINDU TEMPLE,

226 Ross Avenue.      Telephone Main 6583.      Dallas, Texas.

CONSULTATION FREE."

The letterhead is in substance the same. The witness also testified that appellant prescribed for him, and sold him a box of "Azhaca" and two pipes, and told him to smoke the preparation for his catarrh. He paid defendant one dollar for this preparation. It was in a box and on the box were printed words recommending it for the cure of catarrh, asthma, etc. It had on it the name "Singh Remedy Company."

The defendant objected to the introduction of the check above described, because there was no proof made that he had written his name on the back of the check, and the words "one week's medical treatment for my wife," written on the face of the check, should not have been permitted to go before the jury. The witness Ball identified the check as the one given by him to appellant. Appellant accepted it as written. It was payable to him *or order* and could not be cashed by any other person without appellant endorsed it. The proof showed that it had been paid by the bank on which it was drawn. It having been traced directly into appellant's hands, and he contending that he did not charge for his services, we think the check was admissible as a circumstance showing that appellant accepted checks in payment for treating the witness' wife. It was also proper for the witness to state that appellant had told him he did not give receipts, that it was not necessary as he could not collect by law, for it would show that appellant was aware of the provisions of the medical practice act and the business he was pursuing was prohibited by law. Neither did the court err in permitting the witness to state that appellant had prescribed for him for catarrh. Appellant was being prosecuted for unlawfully engaging in the practice of medicine by offering to treat diseases and effect cures thereof, for money, and all this testimony would be admissible as it would tend to show that appellant was practicing medicine.

Neither did the court err in permitting the witness Samuels to state that he had called on appellant at the "temple" and asked him if he could cure his wife of neuralgia, and appellant had replied he could, and that his charges would be ten dollars per week if the witness

brought his wife to the temple, and fifteen dollars per week if appellant was compelled to go to the home of witness.

The main issue in this case was whether or not appellant was treating and offering to treat diseases for pay, and any statement made by him bearing on that point would be admissible.   (Germany v. State, 62 Texas Crim. Rep., 276, 137 S. W. Rep., 130.)

2.   Appellant reserved a bill of exceptions to a remark of the county attorney in his closing address, but requested no special charge in regard thereto.   Counsel should always keep in the record, and never resort to abuse of any character, but in the absence of a special charge being requested, the remark is not such a one as would work a reversal of the case.

3.   Appellant also complains that the court permitted the county attorney to read and discuss in the presence of the jury the Act of the Legislature relating to the practice of medicine, and the opinions of this court in the Newman and Collins cases.   The bill shows that appellant did not request that the jury be retired, and it has been held by this court that this is a matter within the discretion of the trial court.   (Forbes v. State, 35 Texas Crim. Rep., 24; Germany v. State, 62 Texas Crim. Rep., 276, 137 S. W. Rep., 130.)

4.   The appellant requested several special instructions, and excepted to several paragraphs of the court's charge, but they all relate to and hang on one proposition.   The court instructed the jury "that any person shall be regarded as practicing medicine within the meaning of this charge, who shall treat or offer to treat any disease or disorder, mental or physical, by any system or method, or effect cures thereof, and charge therefor directly or indirectly, money or other compensation."   Appellant contended and introduced witnesses to prove that the only treatment he gave was by prayer.   That he did not claim to effect these cures himself, saying his power was from God, and that God effected the cure, and requested the court to charge the jury: "You are instructed that if from the evidence you believe that the defendant used prayer only in his treatment and held himself out as treating disease through the will of God only, that this was not the practice of medicine as defined by statute governing the practice of medicine, and if you so believe you will find the defendant not guilty."   The court refused this instruction, and appellant's attorney has filed an able and lengthy brief insisting that this is the proper construction to give to the medical practice Act.   If the Act is subject to this construction, then if the evidence offered on behalf of appellant was believed, he would be guilty of no offense, and it would have been error to fail to present his theory of the case affirmatively when requested.   However, if the construction contended for by the State is the proper construction, then the evidence offered by him proved beyond the shadow of a doubt that he was treating and offering to treat disease and following that calling.   Section 13 of the medical practice Act defines the meaning of the words "practice of medicine" and it means under that Act

to treat or offer to treat disease by any system or method. In those States where the term is not defined by statute, it is construed to relate only to the practice of medicine as popularly understood, but where the term "practice of medicine" has been given a definition by statute, and so worded as to cover all treatment of disease by whatever nature or means, it has been held that the Legislature had that power and authority. (State v. Marble, 70 L. R. A., 835; State v. Buswell, 24 L. R. A., 68; Ligon v. State, 145 Ala., 659; Bragg v. State, 58 L. R. A., 925; People v. Allcutt, 189 N. Y., 517 (and 117 N. Y., 546); People v. Gordon, 194 Ill., 560; Little v. State, 60 Neb., 749; State v. Gravett, 65 Ohio, 289; Parks v. State, 159 Ind., 211; People v. Somme, 83 N. E., 1128; State v. Yegge, 103 N. W., 17.) In this State it has also been so held in the cases of Newman v. State, 58 Texas Crim. Rep., 233, 124 S. W. Rep., 956; Ex parte Collins, 57 Texas Crim. Rep., 2, 121 S. W. Rep., 501; Germany v. State, 62 Texas Crim. Rep., 276, 137 S. W. Rep., 130; Dankworth v. State, 61 Texas Crim. Rep., 157, 136 S. W. Rep., 788. For a list of authorities in other States see State v. Marble, 73 N. W., 1063, and Nebraska v. Buswell, 58 N. W., 728, in which the question is fully discussed.

The most important of police powers is that of caring for and preserving the health of the citizens of a State, and this power is inherent in sovereignty, and the Legislature may pass all such laws as are reasonably necessary to accomplish that purpose. (Smith's Mun. Cor., vol. 21, p. 1382.) The Act of the Legislature in question is a reasonable exercise of the police power, for in the Act it is provided that nothing in the law shall be construed so as to discriminate against any particular school or system of medical practice. However, it does provide that no one shall treat, or offer to treat any disease, mental or physical, or any physical deformity or injury by any system or method, and charge therefor, unless such person has obtained a license from the board of examiners appointed by the Governor, and said board is required to examine applicants as to their knowledge of anatomy, physiology, chemistry, histology, pathology, bacteriology, physical diagnosis, surgery, obstetrics, gynecology and hygiene. If a person is of good moral character and passes an examination in the subjects named, he may practice whatever method he deems best for effecting the cure of disease. The subject of the public health being a matter subject to the police power of the State, the Legislature has the power to pass laws requiring a certain amount of knowledge on given subjects, which it, in its wisdom, deems essential to the proper diagnosis and treatment of disease. In the law there is no discrimination as to persons or methods, but all are required to undergo the same examination, and then each and every person licensed may treat disease in the way by him deemed best. The Legislature has not sought to say *how* disease shall be treated by anyone, but has simply required that all persons who shall treat or offer to treat disease shall have a knowledge of given subjects, the Legislature deeming this essential to the preservation of the health

of the citizens of the State. It is not for the courts to say that this is wise or unwise; that the requirements are too onerous or are insufficient to accomplish the purposes intended. This is a matter confided to the wisdom of the legislative branch of the government, and in the law it is provided: "that the examination shall be fair and impartial to all individuals." There is no discrimination against any person or class of persons, but the Legislature deeming it essential that all persons who shall treat or seek to treat disease in this State for compensation shall possess knowledge of certain given subjects, it has so declared. The law is not violative of any provision of the Constitution, and is but an exercise of the police power on a subject that all the law writers of note declare is within that power.

5. The only other serious contention is that the State having charged that appellant did treat and offer to treat Mrs. M. Kate Ball, that evidence that he had treated and offered to treat other people should not have been admitted. The law does not denounce the treatment of each individual as a separate and distinct offense, but the offense defined is for a person to treat or offer to treat any disease or disorder without having been licensed so to do by the State Board, and while under the information it would be necessary to prove that he did treat the person named and receive pay therefor, yet the State would not be limited to this proof alone under the information in this case, but could introduce other evidence which showed and tended to show that appellant was treating and offering to treat various diseases for compensation. Especially would this be true under the evidence in this case, as appellant by his evidence was contending that he did not charge for such treatment either directly or indirectly, but only accepted free will offerings.

The Legislature having defined the meaning of the words "practice of medicine" to embrace all "who shall publicly profess to be a physician or surgeon and shall treat or offer to treat disease, etc.; also, all persons who shall treat or offer to treat disease, etc., for compensation," we hold that in so defining the words the Legislature has rendered liable to the provisions of the Act all persons who shall treat disease and charge therefor, regardless of the mode or method used in so doing, and the evidence, both for the State and defendant, showing that appellant was treating and offering to treat diseases and disorders, and the evidence for the State being sufficient to show that he was making charges therefor, the judgment is affirmed.

*Affirmed.*

ON REHEARING.

May 1, 1912.

HARPER, JUDGE.—In this case there has been filed a motion for rehearing, and it is earnestly insisted that no one can be held liable under the medical practice Act unless he holds himself out as a doctor or physician. To give this construction to the statute would nullify

subdivision 2 of section 13. That subdivision makes amenable to the provisions of that law *any person* who shall treat or offer to treat disease or disorder, mental or physical, by any system or method, or to effect cures thereof, directly or indirectly, for money or other compensation. It is thus seen that this portion does not read "any physician," but specifically states "any person." Any one who holds himself out as a physician or surgeon is liable under the law, whether he receives compensation or not, while one who does not so hold himself out must be shown to have received compensation either directly or indirectly. In this case the appellant may not have advertised himself as a physician, but he did advertise as shown in the original opinion, that he was capable of treating disease, and when it is shown he received compensation for his services, he would be liable to the penalties provided in the Act. Again, one who made no charge directly, but told all who applied for treatment that he "would receive free will offerings," would be receiving compensation within the purview of the law, for "indirectly" was used to cover just such evasions. However, in this case Mr. Ball testified that appellant treated his wife. About three days after he took his wife out of the St. Paul Sanitarium, he went to defendant's place of business on Ross Avenue, and appellant went with him to see his wife. That appellant told him he could treat her, and charged him thirty dollars to treat her, which sum he paid. This was receiving pay directly. Appellant himself did not take the stand, and no witness disputed the testimony of Mr. Ball, but it went before the jury uncontradicted. It is true appellant introduced some witnesses who said appellant treated them and made no direct charge, but stated he received only free will offerings. However, this did not contradict what Mr. Ball had testified to in his case, but if it could be so construed as hereinbefore stated, if one was treating disease and making no direct charge, yet he stated to other patients he would receive "free will offerings," this would be receiving compensation for his services indirectly. Collins v. State (U. S. Sup. Ct.), Feb. 19, 1912, advance sheets, p. 286.

Appellant complains that in the original opinion we did not pass on his motion to "strike from the record the original letterhead, printed circular and card" introduced in evidence and sent up with the record. Appellant does not question that they are the papers introduced in evidence, but says he had no notice of the request and was in no manner notified in regard thereto. The county attorney filed in the court below the following motion:

"Now comes the State of Texas acting by and through its duly elected and qualified county attorney and asks that the original papers marked Exhibit (A), (B) and (C) respectively, hereto attached and made a part of this motion, be sent up with the transcript to the Court of Criminal Appeals of the State of Texas, in the above entitled and mentioned cause, because (1) It is impossible for the Appellate Court to understand what appeared on these posters and postal card

without seeing the originals; (2) The substance of the originals as given in the statement of facts is not clear; and (3) It is impossible to describe appellant, his robes, and his palace. These attached three papers were introduced in evidence upon the trial of this cause by the State. Wherefore the State of Texas prays that these papers be forwarded with the transcript herein to the Court of Criminal Appeals at Austin."

This motion was granted by the court and the original papers ordered sent to this court. They are identified as the papers introduced in the trial court. The trial court had the authority and power to make this order whenever he deemed it necessary or proper in fact, this court would have the authority to order them sent up if we deemed it necessary. This has always been the rule in this State, the only limitation being that they must be identified in a way this court will know that they were in fact the papers introduced in the trial court. (Morris v. State, 43 Texas, 372.) However, if we did not consider the originals sent up, the printed matter on the letterhead, circular and card are copied in the statement of facts, but we hold that the trial court on its own motion or the application of either party, when it is deemed necessary, may order any original paper introduced in evidence sent to this court for our inspection. Of course, it should be identified in a way that we will know that it is the original paper introduced in evidence.

The motion for rehearing is overruled.

*Overruled.*