DAVIS *et al. v.* BEELER, ATTORNEY GENERAL, *et al.*

(*Knoxville,* September Term, 1947.)

Opinion filed November 29, 1947.

Rehearing denied January 16, 1948.

Appeal dismissed March 29, 1948, 333 U. S. 859, 68 S. Ct. 745.

640

GOODPASTURE, CARPENTER & DALE, of Nashville, for complainants.

NAT TIPTON, Assistant Attorney General, for defendants

MR. JUSTICE PREWITT delivered the opinion of the Court.

The purpose of the bill filed in this cause was to determine the validity of Chapter 2 of the Public Acts of 1947. This Act deals with the practice of naturopathy in this State. Section 1 of the Act repeals the Act authorizing

the licensing of naturopaths, and section 2 prohibits the practice of naturopathy in this State.

The chancellor upheld the validity of section 1 of the Act, but struck down section 2 because it constituted an unwarranted abuse of the police power of the Legislature and held that naturopathy, being a lawful vocation, could not be prohibited but could only be regulated.

The effect of the chancellor's decree is to remove from the Code the provisions as to licensing of applicants to practice naturopathy, but to leave in effect the licenses granted from 1943 to 1947. It appears that there are some two hundred licensed naturopaths in the State at the present time.

In construing a statute to ascertain the legislative intent, it is permissible to take note of the conditions existing at the time of such enactment. It appears that at the session of the General Assembly previous to the one enacting this statute, a committee was appointed to investigate the unlawful practice of the healing arts, and that the committee made a report to the General Assembly enacting the statute. The report revealed that licenses to practice naturopathy had been issued to wholly unqualified individuals; that they had been purchased; that they had been issued as a result of fraudulent co-operation; that a number of corporations had been chartered by naturopaths to issue certificates of compliance with the educational requirements of existing statutes; and that some of these chartered schools issued diplomas to persons who had attended the schools for a period of time not in excess of one week, but which diplomas certified that the holders thereof were qualified in a number of subjects dealing with the healing arts.

Appellants do not contend that the practices which go to constitute the practice of naturopathy are without ben-

efit in appropriate cases. They take the position further that nothing in the statute in question undertakes to outlaw them nor to prohibit their use by qualified persons.

Naturopathy is defined in Chapter 49 of the Acts of 1943, as amended, Williams' Code, sec. 7025.4, as follows:

"By this Act Naturopathy is permitted to be practiced in the State of Tennessee under the provision of this Act when a person is so qualified, and means, 'Nature cure or health by natural methods' and is defined as the prevention, diagnosis, and treatment of human injuries, ailments, and diseases by the use of such physical forces, as air, light, water, vibration, heat, electricity, hydrotherapy, psychotherapy, dietetics, or massage, and the administrations of botanical and biological drugs, but shall not include the administration of narcotics, sulfa drugs and other toxic drugs, or powerful physical agents, such as X-ray and radium therapy, or surgery, the 'minor matters' mentioned in Section 12 (sec. 7025.12) of this act to be construed as not including tonsillectomy, the opening of the thoracic or abdominal cavities or other major operations requiring an incision. Provided, that this bill or any language shall not apply to, or in any way affect Medical Doctors." Pub. Acts 1945, ch. 43.

No doubt, in the enactment of the Act now under consideration by us, the Legislature was seeking to cure the evils connected with the issuance of licenses to practice naturopathy, and in view of the fact that investigations disclosed that these licenses had been issued in a number of cases to persons totally unqualified, was to take steps against the holders of such licenses, and not to outlaw the acts constituting such. The Act contains no prohibition against the performance of these acts, but merely makes it unlawful for such person to practice naturopathy.

As we conceive the legislative intent, as gathered from the face of the statute and from conditions existing at the time, is, that the prohibition leveled by it was directed at the persons engaged in the practice of naturopathy in this State, and that this legislative purpose was evidenced first, by a bar to all future licensing of such and second, by a prohibition against the use of the licenses theretofore issued. The legislative attempt, in enacting the statute under consideration, was to prevent the practice of naturopathy by ones having only limited qualifications and not possessing what might be termed a general practitioner's or osteopath's certificate, and it cannot be held that the Legislature intended to prohibit the performance of the acts.

Physicians are licensed under Chapter 181 of the Public Acts of 1945, and osteopaths under section 7003 et seq. of Williams' Code. No prohibition exists against these generally licensed practitioners from performing the acts in question and when the three statutory schemes are read together and as a whole, it appears that the Legislature does not deny to osteopaths or general practitioners the right to use the methods employed by the complainants but simply sought to regulate the employment of those methods and to confine them to those having a general qualification. The effect of the statutes governing the practice of medicine, the practice of osteopathy, and the present statute is that no person shall practice naturopathy unless he be licensed either as a general practitioner or as an osteopath. It cannot be disputed that the Legislature has the right to require a general practitioner's license for those who desire to practice a limited branch of the healing arts. The present statute may be treated as one imposing additional qualifications upon persons already in the practice of the

profession. *Hawker v. New York,* 170 U. S. 189, 18 S. Ct. 573, 42 L. Ed. 1002; *Reetz v. Michigan,* 188 U. S. 505, 23 S. Ct. 390, 47 L. Ed. 563. The present statute discloses an effort on the part of the Legislature to regulate one phase of the healing arts and should be construed *in pari materia* with other statutes upon this subject.

In *Howard & Herrin v. N. C. & St. L. Ry. Co.,* 153 Tenn. 649, 660, 284 S. W. 894, 897, 46 A. L. R. 1530, the Court said:

"Statutes forming a system or scheme should be construed so as to make that scheme consistent in all its parts and uniform in its operation. *Harris v. State,* 96 Tenn. 496, 34 S. W. 1017; [*Stonega*] *Coke & Coal Co.* v. [*Southern*] *Steel Co.,* 123 Tenn. 428, 131 S. W. 988, 31 L. R. A. (N. S.), 278; *Bird v. State,* 131 Tenn. 518, 175 S. W. 554, Ann. Cas. 1917A, 634. All acts *in pari materia* should be taken together as if one law. *Merriman v. Lacefield,* 51 Tenn. 209."

Nowhere in this statute or in any of the related statutes can there be found prohibition against the use of these methods by persons otherwise qualified and licensed to use them. By obtaining a general practitioner's license or license to practice osteopathy, persons may pursue the practice of naturopathy without legal restraint. Stated in another way, this statute merely required that persons desiring to practice naturopathy shall obtain a general practitioner's-license or one to practice osteopathy. Such a construction permits the science to be used by general practitioners and by osteopaths. The statute in question is aimed at the practitioner and not at the science. The evident intent of the Legislature was to withdraw recognition of naturopathy as a sepraate branch of the healing arts but allows the use of its methods. Any person now licensed to practice naturopathy may continue the

use of such methods by obtaining the additional knowledge required to qualify as a general practitioner or as as osteopath.

In *Commonwealth* v. *Zimmerman*, 221 Mass. 184, 108 N. E. 893, 895, Ann. Cas. 1916A, 858, the Supreme Court of Massachusetts, in sustaining such requirement, gives its reason as follow:

". . . The protection of the public from those who undertake to treat or manipulate the human body without that degree of education, training and skill which the Legislature has prescribed as necessary to the general safety of the people is within the police power of the state. This general purpose may be effectuated by requiring even of those who propose to confine their practice to a narrow speciality a much broader knowledge of the subject provided such qualification is regarded by the Legislature as necessary for the practice of any branch of medicine. The statute does not impair in any constitutional sense the liberty of the defendant. The protection of the public health is an object of such vital importance to the welfare of the state that any rational means to that end must be upheld."

In *State* v. *Smith*, 233 Mo. 242, 135 S. W. 465, 472, the same insistence was made and rejected by the Supreme Court of Missouri in the following language:

". . . The Legislature thought, perhaps, that this act was necessary to protect credulous sick people from injury at the hands of charlatans and quacks, with their specious promises of a sure cure without drugs; or it may have been thought necessary to forbid harmless practices in order to insure protection against those that are dangerous and hurtful. Sick people sometimes grow desperate in their search for a cure, or their judgment becomes weakened, so that they fall an easy prey to

the ingenious and varied devices of the pretended healer.''

Dr. Herzog in his work on Medical Jurisprudence very clearly calls attention to the dangers flowing from the limited knowledge of the limited practitioner as follows:

''While electro-therapy, mechano-therapy, hydrotherapy, suggestive therapeutics, and certain other forms of treatment for which licenses are issued to limited practitioners are valuable in many pathological conditions, the limited practitioner is likely to do a great deal of harm, not only because he is not thoroughly educated as a physician but as he is only licensed to use a certain system of treatment, he is apt to use it in cases to which it is not adapted.''

Obviously, a much more accurate diagnosis may be expected from a general practitioner who has studied medicine and disease in all its phases than from a limited one with only limited preparation therefor, and an accurate dagnosis of an ailment lies at the very foundation of successful methods of treatment.

The choice of the remedy to be applied to the evil rests with the Legislature and not with the courts, these being co-ordinate branches of government.

But it is insisted that what has been indicated herein will render the statute discriminatory against naturopaths and in favor of osteopaths and chiropractors.

In *Louisiana State Board of Medical Examiners* v. *Fife*, 162 La. 681, 111 So. 58, 61, 54 A. L. R. 594, affirmed by U. S. Supreme Court in 274 U. S. 720, 47 S. Ct. 590, 71 L. Ed. 1324, the Supreme Court of Louisiana said:

''. . . If the Legislature were called upon to recognize every school of medicine, and to deal with it as such, requiring nothing but what the system practiced by each school demands, there might be some force to defendants'

contention, but, as we have held, the Legislature is not called upon to do so, but has a reasonable discretion as to whether a particular school should be recognized and special provision made for it. Since the Legislature has such discretion, defendants cannot complain, on the ground of being unjustly discriminated against, because the Legislature has not deemed proper to recognize their school of medicine, and make special provision for those desiring to practice that system, by prescribing a course of study in accord with the theories which it holds for restoring health. See *Allopathic State Board of Medical Examiners* v. *Fowler, supra,* [50 La. Ann. 1358, 24 So. 809]; *Johnson* v. *State* (Tex. Civ. App.), 267 S. W. 1057; *Singh* v. *State,* 66 Tex. Cr. R. 156, 146 S. W. 891; *State* v. *Morrison,* 98 W. Va. 289, 127 S. E. 75.

Section 7004 of Williams' Code requires that osteopaths shall successfully pass an examination upon virtually all subjects within the purview of medical science. Furthermore, the qualifications for osteopaths are subsstantially the same as those required by general practitioners. No doubt the Legislature thought that the proficiency in the healing arts was sufficient to authorize them to practice generally.

As to chiropractors, they are required to show evidence of having studied certain medical subjects for an extended period too, and the statute authorizing them to practice their treatment is restricted to manual manipulation of the spine and adjacent tissues. Naturopaths were not so restricted in their treatment of diseases but might treat them generally with the exception of surgery and the administration of toxic and powerful drugs. It is not difficult to see, considering the areas in which they operate, why the Legslature would demand higher edu-

cational requirements for naturopaths than are required for chiropractors.

After all, why should not persons who hold themselves out to be doctors, who not only rub and massage patients but prescribe for them, even though narcotics and sulfa drugs are prohibited, be required to have the training of a medical doctor? Evidently, the Legislature thought there was too much border-lining in the practice of naturopathy and determined to stamp out the evil that was not in the science but in the practicing of it, to the definite injury of credulous sufferers.

In *Zahn* v. *Board of Public Works*, 274 U. S. 325, 328, 47 S. Ct. 594, 595, 71 L. Ed. 1074, 1076, the Supreme Court of the United States said:

". . . The most that can be said is that whether that determination was an unreasonable, arbitrary, or unequal exercise of power is fairly debatable. In such circumstances, the settled rule of this court is that it will not substitute its judgment for that of the legislative body charged with the primary duty and responsibility of determining the question. *Euclid* v. *Ambler Realty Co.*, *supra* [272 U. S. 365], pages 388, 395, [396], 47 S. Ct. 114 [71 L. Ed. 303, 54 A. L. R. 1016]; *Radice* v. *New York*, 264 U. S. 292, 294, 44 S. Ct. 325, 68 L. Ed. 690 [694]; *Hadacheck* v. *Sebastian*, 239 U. S. 394, 408, 412-414, 36 S. Ct. 143, 60 L. Ed. 348 [355-358], Ann. Cas. 1917B, 927; *Thomas Cusack Co.* v. *Chicago*, 242 U. S. 526, 530, 531, 37 S. Ct. 190, 61 L. Ed. 472 [475, 476], L. R. A. 1918A, 136, Ann. Cas. 1917C, 594; *Rast* v. *Van Deman & L. Co.*, 240 U. S. 342, 357, 36 S. Ct. 370, 60 L. Ed. 679 [687], L. R. A. 1917A, 421, Ann. Cas. 1917B, 455; *Price* v. *Illinois*, 238 U. S. 446, 452, 35 S. Ct. 892, 59 L. Ed. 1400 [1405]."

It results that we are of opinion that the enactment in question prohibiting naturopathy in this State

is a valid exercise of the police power of the Legislature and no unwarranted discrimination appears in the Act.

The decree of the chancellor is accordingly reversed as, in our opinion, section 2 of the Act is a valid enactment.

NEIL, C. J., and GAILOR and TOMLINSON, JJ., concur.

BURNETT, J., not participating.

## ON PETITION TO REHEAR.

MR. JUSTICE PREWITT delivered the opinion of the Court.

A petition to rehear has been filed herein, but a number of the matters complained of were fully considered by this Court in our former opinion.

▉ We held the legislation in question to be within the police power of the Legislature, and this being true, it becomes immaterial what portion of the regulated profession requires safeguards, as it is not a function of this Court to disturb the motives of a legislative body in enacting legislation within its power.

▉ The law applicable to the power of the Legislature in regulating branches of the healing arts is well expressed in the case of *Butcher* v. *Maybury D. C.*, 8 F. (2d) 155, 158, 159, as follows:

"The right of a physician to practice his profession is a property right, of which he cannot be arbitrarily deprived. *Dent* v. *West Virginia*, 129 U. S. 114, 123, 124, 9 S. Ct. 231, 32 L. Ed. 623; *Douglas* v. *Noble*, 261 U. S. 165, 43 S. Ct. 303, 67 L. Ed. 590; *Bogni* v. *Perotti*, 224 Mass. 152, 112 N. E. 853, 855, L. R. A. 1916F, 831; *Lawrence* v. *Board of Registration*, 239 Mass. 424, 132 N. E.

174, 176; *State* v. *Medical Board*, 32 Minn. 324, 20 N. W. 238, 50 Am. Rep. 575, 576.

"The right is a qualified one, and is held in subordination to the duty of the state under the police power to protect the public health. *Hawker* v. *New York*, 170 U. S. 189, 18 S. Ct. 573, 42 L. Ed. 1002, *Lawrence* v. *Board of Registration*, 239 Mass. 424, 132 N. E. 174, 176. The police power cannot be stipulated or bartered away. *Gray* v. *Connecticut*, 159 U. S. 74, 15 St. Ct. 985, 40 L. Ed. 80. In *State* v. *Hovorka*, 100 Minn. 249, 252, 110 N. W. 870, 871, 8 L. R. A: (N. S.), [1272], 1273, 1275, 10 Ann. Cas. 398, it is said:

" 'No person can acquire a vested right to continue, when once. licensed, in a business, trade, or occupation which is subject to legislative control and regulation under the police power. The rights and liberty of the citizen are all held in subordination to that governmental prerogative, and to such reasonable regulations and restrictions as the Legislature may from time to time prescribe. . . . Regulations so prescribed and conformed to by the citizen may be subsequently changed or modified by the Legislature, whenever public interest require it, without subjecting its action to the charge of interfering with contract or vested rights. This is elementary.'

"In a note found on page 1273 of 8 L. R. A. (N. S.), the author says:

" 'The granting of a license in such cases is merely the means taken by the state, in the exercise of its police power, to regulate and restrict the engaging in certain professions and occupations for the public good, and confers no rights whatever, in the way of a contract with the state, upon the licensee. He takes the same subject to the right of the state, at any time that the public good

demands, to make further restrictions and regulations thereto; and, if such restrictions and regulations are reasonable, they will be upheld, even though they may actually prohibit some people from further engaging in such occupations or professions under a license previously granted.'

"The authorities hold without dissent that it is competent for the Legislature to prescribe qualifications for those who are to practice medicine and thus to assure that they shall possess the requisite character and learning. *Dent* v. *West Virginia*, 129 U. S. 114, 122, 9 S. Ct. 231, 32 L. Ed. 623; *Hawker* v. *New York*, 170 U. S. 189, 18 S. Ct. 573, 42 L. Ed. 1002; *State* v. *State Medical Board*, 32 Minn. 324, 20 N. W. 238, 50 Am. Rep. 575, 577. The regulation of drugless healers is a proper exercise of the police power. *Crane* v. *Johnson*, 242 U. S. 339, 37 S. Ct. 176, 61 L. Ed. 348, Ann. Cas. 1917B, 796, The regulatory power of the state may be properly committed to an administrative board or officer. *Douglas* v. *Noble,* 261 U. S. 165, 170, 43 S. Ct. 303, 67 L. Ed. 590; *State* v. *State Medical Board*, 32 Minn. 324, 20 N. W. 238, 50 Am. Rep. 575, 577.

"These regulatory statutes may be made operative on those engaged in practice prior to the enactment of the statutes. *Dent* v. *West Virginia*, 129 U. S. 114, 122, 9 S. Ct. 231, 32 L. Ed. 623; *Collins* v. *Texas*, 223 U. S. 288, 295, 32 S. Ct. 286, 56 L. Ed. 439; *Lawrence* v. *Board of Registration*, 239 Mass. 424, 132 N. E. 174, 176. The state may change the qualifications from time to time, making them more rigid. *Dent* v. *West Virginia*, 129 U. S. 114, 122, 9 S. Ct. 231, 32 L. Ed. 623; *Gray* v. *Connecticut*, 159 U. S. 74, 15 S. Ct. 985, 40 L. Ed. 80; State v. *Hovorka,* 100 Minn. 249, 110 N. W. 870, 8 L. R. A. (N. S.), [1272], 1273, 1275, 10 Ann. Cas. 398.

"The Legislature may prescribe qualifications, both as to character and learning, which will require those in practice to give up their occupation. *Dent* v. *West Virginia,* 129 U. S. 114, 122, 9 S. Ct. 231, 32 L. Ed. 623; *Hawker* v. *New York,* 170 U. S. 189, 18 S. Ct. 573, 42 L. Ed. 1002. Legislation prescribing qualifications which a practitioner cannot meet because of conditions antedating the enactment of the legislation is valid. Such legislation does not constitute punishment; it is legitimate regulation. *Hawker* v. *New York,* 170 U. S. 189, 18 S. Ct. 573, 42 L. Ed. 1002; *Meffert* v. *State Board of Medical Registration,* 66 Kan. 710, 72 P. 247, 1 L. R. A. (N. S.), 811."

The authorities mentioned in the case quoted above disclose that it lies within the police power to require educational qualifications of those already engaged in the practice of any profession.

▆▆▆▆▆ The insistence that the Acts is in the nature of a bill of attainder is answered by *Butcher* v. *Maybury, supra,* where the same insistence was made. The reply to this insistence in that case is as follows at pages 159, 160 of 8 F. (2d):

" 'A bill of attainder is a legislative act which inflicts punishment without a judicial tral.' *Cummngs* v. *Missouri,* 4 Wall. 277, 323, 18 L. Ed. 356. The statute in question inflicts no punishment. *Meffert* v. *State Board of Medical Registration,* 66 Kan. 710, 72 P. 247, 251, 1 L. R. A. (N S.), 811; *Hawker* v. *New York,* 170 U. S. 189, 18 S. Ct. 573, 42 L. Ed. 1002. If plaintiffs lose the right to continue the practice of their profession, it will not be as a punishment for some offense committed by them, but because their qualifications do not measure up to the legislative requirements.

"In *Calder* v. *Bull* (Pa.), 3 Dall. 386, 390, 1 L. Ed. 648, the court classifies *ex post facto* laws as follows:

" ' (1) Every law that makes an action done before the passing of the law, and which was innocent when done, criminal, and punishes such action.

" ' (2) Every law that aggravates a crime, or makes it greater than it was when committed.

" ' (3) Every law that changes the punishment, and inflicts a greater punishment than the law annexed to the crime, when committed.

" ' (4) Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender.'

"This definition has been repeatedly approved in form or substance. *Hopt* v. *Utah,* 110 U. S. 574, 589, 4 S. Ct. 202, 28 L. Ed. 262; *Mallett* v. *North Carolina,* 181 U. S. 589, 593, 21 S. Ct. 730, 45 L. Ed. 1015; *Kentucky Union Co.* v. *Kentucky,* 219 U. S. 140, 31 S. Ct. 171, 55 L. Ed. 137. It is manifest that the statute in question does not fall within the above classification. It has been expressly held that a statute which makes provision for the cancellation of licenses of those engaged in the practice of medicine is not obnoxious to the *ex post facto* provision of the federal Constitution. *Reetz* v. *Michigan,* 188 U. S. 505, 510, 23 S. Ct. 390, 47 L. Ed. 563."

After careful consideration of the petition to rehear, we are convinced that the Legislature was well within its powers in enacting the statute prohibiting the practice of naturopathy in this State. The methods employed by naturopaths may still be used by those formerly prac-

ticing naturopathy if they obtain the qualifications now possessed by medical doctors and osteopaths.

It results that the petition to rehear is denied.

NEIL, C. J., GAILOR & TOMLINSON, JJ., concur.

BURNETT, J., not participating.