



# THE ATTORNEY GENERAL
## OF TEXAS
### AUSTIN 11, TEXAS

JOHN BEN SHEPPERD
ATTORNEY GENERAL

June 29, 1953

Hon. Austin F. Anderson
Criminal District Attorney
San Antonio, Texas

Opinion No. S-60

Re: Constitutionality of
Article 4590d, V.C.S.
relating to the prac-
tice of naturopathy.

Dear Mr. Anderson:

Your letter presents the following question to this office for consideration:

1) "Is Article 4590d, V.C.S., uncon-
stitutional as being an attempt by the Leg-
islature to give preference to a particular
school of medicine in violation of Texas
Constitution Article XVI § 31 in that it en-
ables such school to diagnose and treat human
ills without equal standards of education and
qualifications?"

2) "If the first question is answered
in the negative, then does Article 4590d,
V.C.S. conflict irreconcilably with and by im-
plication repeal, Article 4510 V.C.S., in that
the definition of naturopathy is in fact en-
compassed by the definition of the practice of
medicine?"

Section 31 of Article XVI of the Constitution
of Texas reads as follows:

"The Legislature may pass laws prescrib-
ing the qualifications of practitioners of
medicine in this State, and to punish persons
for mal-practice, but no preference shall ever
be given by law to any schools of medicine."

Article 739, V.P.C., reads in part as follows:

"It shall be unlawful for any one to prac-
tice medicine, in any of its branches, upon
human beings within the limits of this State
who has not registered in the District Clerk's
office of every County in which he may reside,
. . ."

The case of <u>Dowdell v. McBride</u>, 92 Tex. 239, 47 S.W. 524 (1898), discusses the application of the constitutional provision in this language:

"The first portion of the constitutional provision above quoted confers upon the legislature general power to pass laws (1) prescribing the qualifications of practitioners and (2) to punish persons for malpractice. Continuing the same sentence, the latter part of the provision subtracts from such otherwise general power, the word 'but' being used in the sense of 'except,' <u>by prohibiting the legislature in such laws from inserting any provision making a distinction in such qualifications or punishment on account of the 'school of medicine'</u> to which any of such 'practitioners' or 'persons' may happen to belong. The first portion dealing solely with 'qualifications of practitioners' and 'punishment,' and there being nothing in the context to indicate that the latter portion was intended to embrace any wider range of subjects, we must give it the effect, indicated by its situation and close connection with what precedes, of being merely a limitation upon the previous general power of prescribing 'qualifications of practitioners' and 'punishments.' . . ." (Emphasis Supplied)

Pursuant to this constitutional provision, the Legislature enacted the Medical Practice Act (Chapter 123, Acts 30th Leg., 1907). What is now Article 741 of the Penal Code was a part of that legislation (Section 13) and reads as follows:

"Any person shall be regarded as practicing medicine within the meaning of this Chapter: (1) who shall publicly profess to be a physician or surgeon and who shall diagnose, treat, or offer to treat, any disease or disorder, mental or physical, or any physical deformity or injury, by any system or method, or to effect cures thereof; (2) who shall diagnose, treat, or offer to treat, any disease or disorder, mental or physical, or any physical deformity or injury by any system or method, or to effect cures thereof and charge therefor, directly or indirectly, money or other compensation;

provided, however, that the provisions
of this Article shall be construed with
and in view of Article 740, Penal Code of
Texas, and Article 4504, Revised Civil
Statutes of Texas, as contained in this
Act." (Emphasis supplied indicates the
only changes by the 1949 amendment--the
addition of the proviso clause, and the
1953 amendment adding the word "diagnose".
Art. 4510, V.C.S. is identical.)

This particular provision of the Medical Prac-
tice Act has been before the courts of this State on
several occasions. Shortly after its enactment, its con-
stitutionality was considered because of the contention
that its enactment contravened the Due Process Clause of
the Fourteenth Amendment to the United States Constitu-
tion. Justice Holmes settled that question for all time
upon reasoning which is unimpeachable--the importance of
public health and the preservation thereof gives the State
a dominant interest which may be exercised as police power;
there is no inherent individual right to practice medicine.
Collins v. State, 223 U.S. 288 (1911), affirming Ex Parte
Collins, 121 S.W. 501 (Tex.Crim. 1909); Johnson v. State,
267 S.W. 1057 (Tex.Crim. 1925).

Thus, by the definition of what constitutes the
practice of medicine, two classes of practitioners amenable
to the law are clearly defined. One class consists of
those who publicly profess to be physicians and claim to
effect cures, while the other class consists of those who
treat or offer to treat any disease or to effect cures and
charge for such services. It is very clear that the method
or school of medicine followed by a practitioner of either
class is wholly immaterial. Teem v. State, 183 S.W. 1144
(Tex.Crim. 1916); Newman v. State, 124 S.W. 956 (Tex.Crim.
1910).

The Medical Practice Act does not purport to regu-
late how any person shall treat a disease or disorder, but
merely requires that a person demonstrate that he is well
grounded in certain studies before he may practice medicine.
Lewis v. State, 155 S.W. 523 (Tex.Crim. 1913).

If the person possesses the statutory qualifica-
tions and is awarded a certificate to practice medicine, he
is free to adopt any system of medical practice he desires.
The fact that the Medical Practice Act requires a broader

education than normally required of some particular school can not be urged as a discrimination against such school of medicine. Irrespective of the school of medicine or system of practice followed by the practitioner of medicine in any of these systems, the general welfare of the people demands that the practitioner be able to readily detect the presence of disease. Johnson v. State, supra. As stated by Justice Holmes in the Collins case, supra:

> ". . . He like others, must begin by a diagnosis. It is no answer to say that in many instances the diagnosis is easy,--that a man knows it when he has a cold or a toothache. For a general practice of science is needed. An osteopath undertakes to be something more than a nurse or a masseur, and the difference rests precisely in a claim to greater science, which the state requires him to prove. The same considerations that justify including him justify excluding the lower grades from the law. Watson v. Maryland, 218 U.S. 173, 179-180, 54 L.Ed. 987, 990, 30 S. Ct. 644."

The very purpose of the Act is to prevent incompetent persons from holding themselves out as possessing the qualifications to treat the public. Thus, the courts have uniformly held that the mode or method used in treating the public is immaterial; the person prescribing the treatment must have the qualifications set out in the Medical Practice Act. The laying on of hands and prayer constitutes the practice of medicine. Singh v. State, 146 S.W. 891 (Tex.Crim. 1912). A person practicing chiropractic and naturopathy was held to be practicing medicine. Hawkins v. State, 125 S.W.2d 580 (Tex.Crim. 1939). Other cases involving chiropractors are: Teem v. State, supra; Ex Parte Halsted, supra; Ehrke v. State, 115 S.W.2d 631 (Tex.Crim. 1938); Maier v. State, 235 S.W. 576 (Tex.Crim. 1921). But see the case of Nicodeme v. Bailey, 243 S.W.2d 397 (Tex. Civ.App. 1951, error ref. n.r.e.), the only case mentioning the non-preference clause of the Constitution subsequent to the 1947 Chiropractic amendment to the Medical Practice Act. As to optometry prior to the Optometry Act, see Baker v. State, 240 S.W. 924 (Tex.Crim. 1922), and after the passage of that Act see Ex Parte Halsted, supra. As to osteopaths, Ex Parte Collins and Collins v. State, both supra. As to masseurs, Dankworth v. State, 136 S.W. 788 (Tex.Crim. 1911); Milling v. State, 150 S.W. 434 (Tex.Crim. 1912); Hyroop v. State, 179 S.W. 878 (Tex.Crim. 1915).

It must first be determined whether a naturopath, licensed under the provisions of the Naturopathic Act, Article 4590d, V.C.S., is engaged in the practice of medicine. The practice of naturopathy is defined in that Act as follows:

"For the purpose of this Act, naturopathy and natureopathy shall be construed as synonymous terms, and the practice of naturopathy or natureopathy, is hereby defined as that philosophy and system of the healing art embracing <u>prevention, diagnosis, and treatment of human ills and functions</u> by the use of several properties of air, light, heat, cold, water, manipulation with the use of such substances, nutritional as are naturally found in and required by the body, excluding drugs, Surgery, X-ray, and radium therapy, and the use of X-ray equipment.

"Nothing in this Act shall be construed to be authority for any naturopath, licensed hereunder, to practice medicine <u>as defined by the laws regulating the practice of medicine in this State</u>, Surgery, Dentistry, Osteopathy, Chiropractic, Christian Science, or any other treatment or system of treatment authorized for by law, nor shall the provisions of this Act in any way or manner apply to or affect the practice of Medicine, Surgery, Osteopathy, Christian Science, or any other treatment or system of treatment authorized and provided for by law for the prevention of human ills." (Emphasis supplied).

Thus, the positive feature provides that naturopathy is the philosophy and system of the healing art embracing the <u>prevention, diagnosis and treatment of human ills</u> by certain means; and by the negative part is not to be construed as giving the naturopath the right to practice medicine.

It appears that the paragraphs of the Naturopathic definition conflict with each other. Article 741, V.P.C., by defining the practice of medicine, further confuses the problem for a naturopath licensed under this Act

may treat human ills but (by the same section) if he treats these ills, he violates the law.

It may be contended that this construction is too restrictive, but the intent of the Legislature was to set naturopathy aside as an independent field of endeavor separate and distince from the practice of medicine, and that any provisions of the Act leading to a contrary conclusion must be rejected. Thus, in prohibiting the naturopath from practicing medicine, the intention of the Legislature was to permit the naturopath to act only in the realms of his particular endeavor without the use of drugs, surgery, etc., usually imputed to a practitioner of medicine. This, in essence, was the contention in the Halsted case, supra. Thus the question occurs as to whether the Legislature has the authority to make such a distinction.

Before discussing that point, however, it should be noted that the cases previously cited definitely determine that the Medical Practice Act of 1907, as amended, makes no distinction between schools of medicine or methods of treatment, but merely requires that a practicioner pass an examination proving his qualifications. Ashby v. Board of Medical Examiners, 142 S.W.2d, 371 (Tex.Civ.App. 1940, error ref.). It is also clear that the constitutional provision does not prohibit a legislative definition of what does and what does not constitute the practice of medicine. Baker v. State, supra; Ex Parte Halsted, supra.

It is clear that in order to practice naturopathy a person must treat diseases or disorders and attempt to effect a cure. This is the practice of medicine. Art. 741, V.P.C. The question recurs on the power of the Legislature to set aside the practice of naturopathy as a separate healing art.

In the Halsted case, supra, a writ of habeas corpus was sought to obtain the discharge from custody of W.B. Halsted who had been arrested upon charges of practicing chiropractic without a license. Other activities were engaged in by the defendant in "violation" of the statute. The court discussed the provisions of the Chiropractic Act in the light of the constitutional provision and upon the question of being definite and certain. If the provisions were certain, it would be in violation of the constitutional provision. If the law was uncertain, it would fall of its own weight. One of these conclusions was stated in the following language:

"Thus the legislature has carved out of the field of the healing art a single system for treating diseases and disorders, and has given it special treatment, limiting the use thereof to those only who qualify under the terms of this Act. That such legislation violates the non-preference clause of Art. 16, Section 31, of our State Constitution definitely appears."

The Halsted case, supra, distinguishes the practice of chiropractic from the practice of dentistry and optometry under the non-preference clause of the Constitution (Art. XVI, Section 31) as being the treatment of the whole human body rather than a segment. Art. 741, V.P.C. Such a distinction cannot be made in the case of naturopaths. The Halsted case is squarely in point and the following language used in that case substantiates the position taken here:

". . . Assuming, then that under the Act before us, the Legislature has set up, recognized, and defined chiropractic as a system, means, and method for the treatment of diseases and disorders of the human body, and that practitioners thereof are authorized to treat by chiropractic, patients for diseases and disorders, it is evident that the Legislature has preferred such science and such practitioners over all others engaged in doing the same thing, that is, in treating the human body for diseases and disorders because the chiropractor is not required to have the same educational qualifications nor is he required, as a condition precedent to his right to treat patients, to pass a satisfactory examination upon the same subjects that are required of all others similarly situated."

The principles announced in that case, when applied to the question presented, conclusively demonstrate that the qualification and educational requirements imposed by the Naturopathic Act are not identical nor even substantially the same as those of the Medical Practice Act. Contrast Article 4590d, Sections 3, 8, and 9, V.C.S., with Articles 4500, 4501, and 4503, V.C.S. Nor does the Naturopathic Act repeal or modify the Medical Practice Act. Article 4590d, Section 5, V.C.S.

The Basic Science Law, Chapter 95, Acts of the 51st Legislature, 1949, Article 4590c, V.C.S., does not disturb the conclusions herein expressed, for that law merely provides that before a person is permitted to take an examination for a license to practice the healing art, he must present to the State Board of Examiners in Basic Sciences a certificate of proficiency in certain enumerated studies.  Article 4590c, V.C.S.  (Sections 1 and 3). These provisions have been construed as additional requirements to those imposed by the Acts requiring the examination by the different schools of medicine.  _Stroud v. Crow_, 136 S.W.2d 1025 (Ark.Sup. 1940, app.dism. 311 U.S. 607 (1940); Att'y Gen. Op. V-988 (1950).

The Basic Science Law does not purport to set up standards for the practice of medicine.  Section 1 of that Act reads as follows:

"_No person shall be permitted to take an examination for a license_ to practice the healing art or any branch thereof, or be granted any such license, unless he has presented to the Board or officer empowered to issue such a license as the applicant seeks, a certificate of proficiency in anatomy, physiology, chemistry, bacteriology, pathology, and hygiene and public health, hereinafter referred to as the basic sciences, issued by the State Board of Examiners in the Basic Sciences."  (Emphasis supplied)

The emergency clause contains an added reason for this construction.  It reads in part as follows:

"Sec. 26.  The importance to the public of the provisions of this Act _and the necessity for further safeguarding the granting of licenses to persons practicing the healing arts_ contained in this Act, . . ."  (Emphasis supplied)

Neither can it be contended that the Healing Arts Identification Act, chapter 154, Acts 52nd Legislature, 1951, Article 4590e, V.C.S., in any manner affects the problem presented here.  That Act merely requires that a person who is licensed to practice the healing art identify the system he follows by the placing of proper identification after his

name under certain circumstances. The caption clearly shows this to be the only purpose of the Act and Section 2 then specifically provides that the definition of "healing arts" is only for the purpose of that Act.

The three very able briefs submitted for consideration advance the position that the Halsted case is not determinative of the question presented. For the reasons stated above, that position can not be sustained.

It is a fundamental concept of our jurisprudence that the actions of the Legislature are entitled to every consideration reasonably upholding their constitutionality. Indulging every presumption possible still leaves us with the inescapable conclusion that the Legislature has preferred one school of medicine over another by the lessening of the qualifications and standards of education required of a naturopath. Thus, no matter how worthy this classification might be and no matter what beneficial results would be attained if the Act were upheld, the Constitution is controlling and this legislation does not conform.

The Naturopathic Act violates the provisions of Art. XVI, Sec. 31 of the Constitution of Texas since it gives a preference to one segment of the healing arts. To rule otherwise would require a holding that the Act is uncertain and indefinite in defining the practice of naturopathy and thus unconstitutional.

Your first question is answered affirmatively thereby rendering an answer to your second question unnecessary.

SUMMARY


The Naturopathic Act, Article 4590d, V.C.S. violates the provisions of Art. XVI, § 31 of the Constitution of Texas in that it gives a preference to one segment of the healing arts. To rule otherwise would require a holding that the Act is

uncertain and indefinite and thus unconstitutional.  Ex Parte Halsted, 182 S.W.2d 479 (Tex.Crim. 1944).

APPROVED:

Phillip Robinson
Appellate Division

C. K. Richards
Reviewer

Robert S. Trotti
First Assistant

John Ben Shepperd
Attorney General

EMM:wb

Yours very truly,

JOHN BEN SHEPPERD
Attorney General

By *Elbert M. Morrow*
    Elbert M. Morrow
            Assistant